**FLETCHER et al. v. CLARK, Collector of Internal Revenue.**

No. 2916.

District Court, D. Wyoming.

Sept. 8, 1944.

George T. Evans, of Denver, Colo., and E. E. Wakeman, of Newcastle, Wyo., for plaintiffs.

Carl L. Sackett, U. S. Atty., of Cheyenne, Wyo., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, F. A. Michels, and William B. Waldo, Sp. Assts. to the Atty. Gen., for defendant.

KENNEDY, District Judge.

This is a suit to recover income taxes paid by plaintiffs under protest, upon the ground that said taxes were illegally laid upon plaintiffs' trust as an association taxable as a corporation. Upon a pre-trial conference it was stipulated and agreed that the assessment for the tax involved in the suit by the Revenue Department was regular in all respects and that the tax imposed was correct as to amount, provided the tax imposed upon the trust was legally assessed as an association taxable as a corporation under the revenue statute. The taxes involved amount to $25,926.52 covering the years 1940 to 1942, inclusive. Issues were joined and the case tried to the Court. The defendant offered no evidence upon the trial but relied upon the disclosures of the documentary evidence and oral testimony produced by the plaintiffs in support of his contention in the premises. At the close of the trial the case was orally argued and memorandum briefs submitted.

The trust agreement out of which the controversy arises is dated October 31, 1929, and is denominated a trust deed and agreement by which is created an unincorporated association, under the trade name and style of "Standard Bentonite Company". It appears to be signed by some eighteen to twenty persons who are interested and owners by location or purchase of certain placer mining claims. It is stated that it is the desire of these persons to combine their interests so that each may have a beneficial interest in the entire group of claims and that the association is created for convenience in handling and operating the claims of the individuals. To carry this into effect the signators agree to quitclaim unto the trustees their several interests in the mining claims, which trustees are to hold title to and to represent the interests of the beneficiaries in all matters concerning the claims. The trustees are given full right and authority to manage, control, sell, lease, incumber, dispose of, and to contract to develop the

property, to mine it, to operate and develop it, or otherwise handle or dispose of the property or any part thereof upon such terms as the trustees may think best. The trustees have full power to execute deeds, leases and other instruments concerning the title. In case of death, resignation or disqualification of any of the trustees, the surviving trustees shall have full power to act with a provision for filling a vacancy by the living trustees with the approval of the holders of the majority of the beneficial interests in the trust. Each beneficiary has the right to participate in profits as an undivided fraction of the whole. The trustees are required to issue beneficial owners' certificates showing the interest of each person, which beneficial interests are assignable and, in case of assignment, a new certificate is to be issued to the assignee. The trustees have the power to dispose of the interests of a beneficiary in case of failure of such beneficiary to meet any assessment imposed upon him by the trustees. The trust agreement is binding upon heirs, executors, administrators and assigns of the several beneficiaries and shall remain in existence for a period of twenty-five years.

As to the activities of the trustees under the trust agreement, the evidence discloses that from the time of its organization in 1929 until 1940, the only services performed by the trustees was to see that the annual assessment work required to hold the mining claims was performed but no account was kept as to the actual cost of this work and it seems that the trustees called upon the beneficial owners for their contribution to a fund to keep up the assessment work. Beginning in 1940 several transactions took place by which the trustees made sales of a part of the corpus of the trust, together with leases upon a portion of the property until in 1942 the entire corpus of the trust was disposed of with the written approval of each beneficiary. The trustees themselves never mined any portion of the trust property.

The foregoing is a brief sketch of the matters disclosed by the trust agreement and the evidence upon which the claim of the plaintiffs is presented for the recovery of the alleged illegally imposed tax.

Many cases have been cited by counsel in support of their varying contentions but it would seem to be unnecessary to review them in the light of a recent decision in our own Circuit when the same proposition of law was before the Tenth Circuit Court of Appeals for decision in the case of Commissioner v. City National Bank & Trust Company, 142 F.2d 771. In that case, in the opinion on page 772, the Court says: "There is no uncertainty in the principles of law which must guide us in our consideration of this question. They are spelled out clearly and definitely by the Supreme Court in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 290, 80 L.Ed. 263. The difficulty, as always, comes when we apply principles of law to a given state of facts. Under the decision of the Supreme Court in the Morrissey case, the decisive factor is whether the trust is an orthodox or pure trust as distinguished from a business trust or association."

Inasmuch as this decision was recent, being promulgated on May 13, 1944, we feel bound to analyze and reach a conclusion in the case at bar in the light of the Morrissey case. In the Morrissey case, the Court discusses the significance of the term "Association" as found in the Taxing Act, upon which the tax here is based, which is 26 U.S.C.A.Int.Rev.Code, § 3797 (a) (3), and which reads: "The term 'corporation' includes associations, joint-stock companies, and insurance companies."

At page 356 of 296 U.S., at page 295 of 56 S.Ct., 80 L.Ed. 263, the opinion reads: "3. 'Association' implies associates. It implies the entering into a joint enterprise, and, as the applicable regulation imports, an enterprise for the transaction of business. This is not the characteristic of an ordinary trust—whether created by will, deed, or declaration—by which particular property is conveyed to a trustee or is to be held by the settlor, on specified trusts, for the benefit of named or described persons. Such beneficiaries do not ordinarily, and as mere cestuis que trustent, plan a common effort or enter into a combination for the conduct of a business enterprise. Undoubtedly the terms of an association may make the taking or acquiring of shares or interests sufficient to constitute participation, and may leave the management, or even control of the enterprise, to designated persons. But the nature and purpose of the co-operative undertaking will differentiate it from an ordinary trust. In what are called 'business trusts' the object is not to hold and conserve particular property, with incidental powers, as in the traditional type of trusts,

but to provide a medium for the conduct of a business and sharing its gains. Thus a trust may be created as a convenient method by which persons become associated for dealings in real estate, the development of tracts of land, the construction of improvements, and the purchase, management, and sale of properties; or for dealings in securities or other personal property; or for the production, or manufacture, and sale of commodities; or for commerce, or other sorts of business; where those who become beneficially interested, either by joining in the plan at the outset, or by later participation according to the terms of the arrangement, seek to share the advantages of a union of their interests in the common enterprise."

And, 296 U.S. at page 358, 56 S.Ct. at page 295, 80 L.Ed. 263, the Court continues the discussion as follows: "While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive. Thus an association may not have 'directors' or 'officers,' but the 'trustees' may function 'in much the same manner as the directors in a corporation' for the purpose of carrying on the enterprise. The regulatory provisions of the trust instrument may take the place of 'by-laws.' And as there may be, under the reasoning in the Hecht case [Hecht v. Malley, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949], an absence of control by beneficiaries such as is commonly exercised by stockholders in a business corporation, it cannot be considered to be essential to the existence of an association that those beneficially interested should hold meetings or elect their representatives. Again, while the faculty of transferring the interests of members without affecting the continuity of the enterprise may be deemed to be characteristic, the test of an association is not to be found in the mere formal evidence of interests or in a particular method of transfer."

The whole opinion is pertinent to the question before the Court here as it draws a line of distinction between what is designated as business trusts and other classes of trusts, some of which are sometimes called "pure" trusts. Further quotation from this decision would unduly prolong this memorandum but the Court there ar-

rived at the conclusion that the trust in that case constituted an association taxable as an association included in the term corporation in the Revenue Act.

Examining the facts in the case at bar as to whether or not the case is brought within the scope of the Morrissey decision, I have reached the conclusion that the tax must be upheld as one legally assessed against an association taxable as a corporation under the revenue statute. It may be admitted that the trust here is unlike in some respects a corporation in its creation and operation as to there being no limit of liability on beneficiaries; no method for the issue and transfer of certificates in a manner similar to the transfer of shares of stock in a corporation; no provision for a seal, for meetings of holders of beneficial interest, for keeping minutes of any meetings of trustees or beneficiaries, for by-laws or for officers, for a designated place of business, for hiring of employees, for expenses of assessment work on mining claims and the like, and yet, the Supreme Court has seemed to sweep these distinguishing elements aside as not being decisive upon the taxable nature of the association or trust.

A brief statement of what I conceive to be the logic of the Morrissey opinion, is that trusts organized and conducted for business purposes are to be classed as associations to be taxed as are corporations under the Revenue Act, as distinguished from trusts which are held by a trustee for the benefit of certain described persons not involving any particular business enterprise and where the idea of profit is not a predominating factor.

Again, the Supreme Court in Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278, decided at the same term as the Morrissey case, holds in effect that the trust instrument may be looked to in ascertaining the purpose of the trust as to its authorized range of activities and that the parties who organize the trust are not at liberty to say that their purpose was other or narrower than that which they formerly set forth in the trust instrument. It appears from the trust instrument here under investigation that the trustees were not only authorized to manage and control and dispose of the property but had authority to operate and develop it, or otherwise handle or dispose of it with the right being reserved to the owners of the beneficial interests in the

property to participate in the profits of the enterprise. If the trust instrument is to be looked to as a guide in determining the purposes of the trust, under the authorities cited, then it must be classified as a business association with powers delegated to the trustees to carry on a business of operation for profit to be distributed to the beneficiaries.

Finally, it is contended by plaintiffs that, inasmuch as the Standard Bentonite Company is admitted by the pleadings to be a trust, under the law it cannot be taxed as an association or corporation under any circumstances inasmuch as the law specifically provides how trusts shall be taxed. A short answer to this contention may be that under the decisions of the Supreme Court, the plaintiffs' organization is a trust in nomenclature only and in reality a business association organized for profit and therefore comes within the classification for taxation purposes of a corporation. It is therefore outside the scope of the Revenue Act applying to the taxation of property held in trust.

For the reasons stated the Court will find generally for the defendant, and findings of fact and conclusions of law in harmony with this memorandum, together with such basic findings and conclusions as may be necessary to support the decision of the Court, will be submitted by counsel for the defendant in collaboration with counsel for plaintiffs on or before October 14, 1944, reserving to plaintiffs all proper exceptions, and an order may be entered accordingly.