HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* COLEMAN-GILBERT ASSOCIATES.

Nos. 78 and 79. Argued November 21, 1935.—Decided December 16, 1935.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed, Assistant Attorney General Wideman,* and *Miss Helen R. Carloss* were on the brief, for petitioner.

*Mr. Ralph E. Tibbetts,* with whom *Mr. Henry Herrick Bond* was on the brief, for respondent.

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

The Commissioner of Internal Revenue determined deficiencies in income taxes for the years 1927 to 1929 upon the ground that respondent was taxable as an association. The decision of the Board of Tax Appeals, sustaining this ruling, was reversed by the Circuit Court of Appeals. 76 F. (2d) 191. In view of the conflict of decisions as to the test to be applied, we granted certiorari. See *Morrissey* v. *Commissioner, ante,* p. 344.

From the facts, as found by the Board of Tax Appeals, it appears that respondent was formed by an indenture of trust in November, 1926. The creators of the trust were Harry Coleman, Pauline Coleman, Bernard Gilbert, Harris Levine, and Lena Levine. They were co-owners of real property consisting of about twenty apartment houses in the city of Boston and vicinity.

The property had originally been owned by Harry Coleman, Bernard Gilbert and Harris Levine in equal shares, but subsequently Coleman and Levine transferred to their wives one-half of their interests. These five persons had for some time been associated in the business of owning and operating apartment houses. By the trust instrument, which recited a contemporaneous conveyance of the property to themselves, they declared that the real estate so conveyed, and any real estate thereafter acquired under the trust, should be held by them in trust for the purposes described, with the designation " Coleman-Gilbert Associates." The trust was to continue for fifteen years unless sooner terminated by sale and distribution of the trust estate. The trustees were to hold the property in order to improve and dispose of it for the benefit of the persons named as " *cestuis que trustent* and beneficiaries, and

their respective representatives and assigns, devisees, or legatees " in the shares provided in the instrument. Except as stated, the beneficiaries were to have no interest in the trust property, and " especially " they were to have " no right to call for any partition thereof." The interests of the beneficiaries were to be personal property, and the death of any one or of all the beneficiaries was not to determine the trust nor entitle the legal representatives of the decedent to an accounting by the trustees.

The trustees were to have the " full power and discretion " of absolute owners, with authority to invest and reinvest the trust property, including its income, in mortgages or in obligations secured upon real estate, and " in the purchase and improvement of real estate situated in the cities or towns of the Commonwealth of Massachusetts." The trustees were authorized to sell at public or private sale any part or all of the trust property upon such terms as they might see fit, " to improve, to lease for a term beyond the possible termination " of the trust, or for any less term, " to hire for improvement or otherwise, to let, to exchange, to release, to partition," to borrow money, and to execute all necessary contracts. Funds in the possession of the trustees, being " the proceeds of sales or otherwise," or net income, which was "not required in their judgment for development or improvement of the trust property," were to be divided and paid over annually, or oftener, if convenient, equally among the said beneficiaries and their respective representatives and assigns in the proportions stated. The trustees were to have no power to bind the beneficiaries personally, and the trustees were to be responsible only for willful default and breach of trust. There was also provision for the resignation of trustees, and in case of death or resignation of a trustee, the surviving trustees were to appoint successors, and if they failed to do so, the beneficiaries were to have the right of appointment.

The Board of Tax Appeals found that the trust owned and operated some twenty apartment houses, the gross annual rents of which amounted to about $420,000. There were approximately 1500 tenants. The gross cost of the properties was about $3,000,000. Employees' payrolls amounted to about $25,000, and the operating expenses to about $300,000, annually. The trustees drew no salary. Two of the male trustees devoted their entire time to the management and a third trustee was also actively engaged. An office force of three persons, besides the three operating trustees, was required to keep the necessary financial records of the trust. There were no "building managers" or superintendents. The trustees supervised the maintenance of the trust properties, looking after their operating condition, collecting rents, ordering repairs, purchasing supplies, arranging loans and supervising office details, securing new tenants, and generally operating the trust properties. The female trustees were entirely inactive.

The Board of Tax Appeals summed up its findings by saying: "These trustees, although they did not exercise all of the powers given to them in the trust instrument, were engaged, nevertheless, in carrying on a business for profit in much the same manner as the directors of a corporation are associated together for the purpose of carrying on a business enterprise."

We think that the Board was right in its conclusion that the trust constituted an association within the meaning of the revenue acts. The governing principles have been discussed in *Morrissey* v. *Commissioner, supra,* and need not be restated. The small number of persons in the trust now before us does not present a difference in the legal aspect of their enterprise from the standpoint of the statutory classification. A few persons, as well as many, may form an association to conduct a business for their common profit. Nor is the absence of provision for

control by the beneficiaries, as such, determinative. The fact that the enterprise was confined to dealings in real property, its management and improvement, does not prevent its being classified as an association. See *Swanson* v. *Commissioner, ante,* p. 362. The Circuit Court of Appeals, while not questioning the sufficiency of the evidence to warrant the Board of Tax Appeals in finding that the trustees were conducting a business enterprise for the purpose of ensuring an income for the beneficiaries, and that the trustees may have exercised powers in some respects as great as those of the directors of a corporation, found a distinction in the procedure that had been followed. There had been no meetings, no records, and the acts of the trustees were not determined by a majority vote. The trustees had conducted the business in the same manner as it had been conducted before the trust was formed. We think that the court unduly emphasized the mere differences of formal procedure. If such differences were to be made the test in determining whether or not an enterprise for the transaction of business constitutes an association, the subject would be enveloped in a cloud of uncertainty, and enterprises of the same essential character would be placed in different categories simply by reason of formal variations in mere procedural details. The significant resemblance to the action of directors does not lie in the formalities of meetings or records but in the fact that, by virtue of the agreement for the conduct of the business of a joint enterprise, the parties have secured the centralized management of their undertaking through designated representatives.

We agree with the Circuit Court of Appeals that weight should be given to the purpose for which the trust was organized, but that purpose is found in the agreement of the parties. Not only were they actually engaged, as the Board of Tax Appeals determined, in carrying on an extensive business for profit, but the terms of the trust

instrument authorized a wide range of activities in the purchase, improvement and sale of properties in the cities and towns of the State. The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted. Undoubtedly they wished to avoid partition of the property of which they had been co-owners, but their purpose as declared in their agreement was much broader than that. They formed a combination to conduct the business of holding, improving and selling real estate, with provision for management through representatives, with continuity which was not to be disturbed by death or changes in ownership of beneficial interests, and with limited liability. They had been co-owners but they preferred to become " associates," and also not to become partners. *Morrissey* v. *Commissioner, supra.*

The decrees of the Circuit Court of Appeals are reversed and the orders of the Board of Tax Appeals are affirmed.

*Reversed.*