*91 OPINION.
Arnold:
The first issue is whether the trusts now before us are, as a matter of law, associations taxable as corporations, since the several revenue acts define the term “corporation” as including associations, joint-stock companies, and insurance companies. Sec. 2 (2), Revenue Act of 1921; secs. 2 (a) (2), Revenue Acts of 1924 and 1926; sec. 701 (a) (2), Revenue Act of 1928.
Recently, the Supreme Court has had occasion to restate the fundamentals to be considered in determining whether certain trust indentures created trusts or associations taxable as corporations. Swanson v. Commissioner, 296 U. S. 362; Helvering v. Coleman-Gilbert Associates, 296 U. S. 369; Helvering v. Combs, 296 U. S. 365; Morrissey v. Commissioner, 296 U. S. 344. In each of these cases the trust indenture used language purporting to create an ordinary trust, but the Court held that actually there was created, in each instance, an organization for profit having many of the attributes of a corporation.
The salient features of a trust created and maintained as a medium for the carrying on of a business and sharing in its gains were fully discussed in the Morrissey opinion. These features may be briefly stated as: (1) trustees, as a continuing body with provision for succession, holding title to property; (2) centralized management; (3) security from termination or interruption by death of owners of beneficial interests; (4) transfer of beneficial interests without affecting continuity of enterprise; and (5) limitation of personal liability to property embarked in the undertaking.
Speaking specifically regarding these features the Court states, p. 296:
It is no answer to say that these advantages flow from the very nature of trusts. For the question has arisen because of the use and adaption of the trust mechanism. The suggestion ignores the postulate that we are consid *92 ering those trusts which have the distinctive feature of being created, to enable the participants to carry on a business and divide the gains which accrue from their common undertaking, trusts that thus satisfy the primary conception of association and have the attributes to which we have referred, distinguishing them from partnerships. In such a case, we think that these attributes make the trust sufficiently analogous to corporate organization to justify the conclusion that Congress intended that the income of the enterprise should be taxed in the same manner as that of corporations.
Since the Supreme Court’s decision in the foregoing cases the Board has decided at least two cases where similar questions were raised, Girard Trust Co., Trustee, 34 B. T. A. 1066, and Broadway-Brompton Buildings Liquidation Trust, 34 B. T. A. 1089. In each proceeding we held that the trust was taxable as a trust, because each trust was created for liquidation purposes and not to enter into a business enterprise.
Turning to the facts of these proceedings it must be conceded that elements of a trust and an association are present as to each, but in our opinion, the paramount purpose of each trust was liquidation. These beneficiaries pooled their interests for the orderly and equitable distribution of the proceeds from a large tract of land, then owned by them as tenants in common, the nature of which made partition impractical. Their efforts were directed toward the conservation of their resources pending disposition, which is quite different from conducting a business for profit. While it is quite true that these trusts had certain salient features of trust organized to carry on a business for profit, such as, (1) property held by trustees, (2) centralized management, (3) security from interruption or termination of the trust by death of holders of beneficial interest, and (4) transferability of beneficial interests within strict limitations, yet these salient features have been found in ordinary trusts without making them associations taxable as corporations. Broadway-Brompton Buildings Liquidation Trust, supra,. And it should be noted that one of the salient features stressed by the Supreme Court, in the Morrissey and Swanson cases, supra, namely limitation of personal liability to the property embarked in the undertaking, is missing in these proceedings, since there is no provision with respect thereto in either of the trust deeds before us.
The very essence of the issue, therefore, is whether there was an associating together by the beneficiaries and owners in a joint enterprise for profit. Several factors point to the answer. In the first place the original owners, Kehr and Pitzman, were very advanced in age at the time an organization to handle their real estate holdings was being considered. Kehr died before an organization could be perfected, leaving Pitzman and Kehr’s four heirs as the joint owners of the property. The Kehr heirs and Pitzman recognized the need of some organization that could conveniently handle and dis *93 pose of the property without the necessity of consulting and securing the signature of each individual owner and spouse, where married; that, should any of the interested parties die leaving minors or otherwise become incapacitated, sales and conveyances would be delayed and complicated through necessary court proceedings. It was recognized that partition was not possible without loss to all, and the testimony is unrefuted that the object of creating the trust was to enable the liquidation of the property as rapidly as possible and to the best interest of all concerned.
In the second place the character of the trust deed of May 22, 1918, and the declared purpose thereof are in accordance with the testimony that the trust was created for liquidation. The declared purpose was “to dispose of the realty in such times and such manner as the trustees deem to be to the best interest of the beneficiaries.” By the terms of the trust deed of December 1928, “the trustees are given absolute control of the trust estate for the purpose of alienating the same.” The provision for division of the cash as received among the beneficiaries is clearly in accord with the declared purpose of liquidation. The powers and duties of the trustees as prescribed by the trust deeds were means for carrying out the declared purpose of the trusts, and we are unable to find therein any requirement or provision which is foreign to good business practice or conduct on the part of any fiduciary with a like purpose in view.
Thirdly, the activities of the trustees were in keeping with the declared, purpose of the trust. The record shows that the trustees were disposing of the property by sale and lease upon terms which they considered to the best interests of the beneficiaries. It may well be that the sale of this property could have been accelerated by a radical reduction in the sale price, but the law does not require the trustees to sacrifice property in order to hurriedly complete liquidation. Broadway-Brompton Buddings Liquidation Trust, supra. In the Girard Trust Go., Trustee, case, supra, the Board stated that under the circumstances in that proceeding a tract of 54 acres was too large for the market, and that subdivision was the only effective way to dispose of it. Here, we have a tract of over 1,600 acres, part of which was, on May 22, 1918, being used for industrial purposes. The price at which the trustees were- willing to sell was a matter within their discretion, and while their prices were exorbitant for farming purposes, subsequent sales of about 400 acres for industrial purposes would indicate that purchasers desiring industrial sites could and would pay the prices asked by the trustees. Respondent contends that this was nothing but a long range speculative venture, which may have been true as to the original purchasers. It does not follow, however, that the intention of the original cotenants was retained by their heirs. The situation facing them *94 was that each year taxes, repairs to roads, levees, and tenant houses, and other expenses had to be met to preserve the property. In the meantime the trustees sought to reduce their carrying charges as much as possible by any available use of the property which would yield a return until it could be sold. In our opinion this was nothing more than the exercise of good business judgment by the trustees.
The principal value of the property is essentially for industrial uses. It is not desirable for development and sale as residential subdivisions on account of its location and low elevation. It has some value for farming purposes but that is very small compared with its value for industrial purposes. It is true the demand for industrial sites in this vicinity has been slow but the property by reason of its location and surroundings is perhaps the most desirable in the Saint Louis-East Saint Louis area. Doubtless the reason for providing term extensions in the trust agreements was the knowledge that on account of its particular adaptability purchasers would be limited, sales would be slow, and it would require a long period of time to liquidate without undue sacrifice in price. The primary purpose in the beginning was to sell and dispose of the property and divide the proceeds. That purpose was manifest throughout both trusts and the handling of the property by the trustees was consistent to that end. They were not only awaiting an opportunity to sell, but were active in soliciting purchasers. Under these circumstances we do not think the time element in the trust agreements and the delay in making sales have the effect of stamping these trusts as business rather than liquidating trusts.
While respondent lays no particular stress on the development and improvement of the trust acreage by the trustees, he does stress language found in the Supreme Court decisions, supra, relating to the business of holding, improving, and selling real estate, and stating that trusts were convenient methods by which persons become associated for dealings in, real estate, the development of tracts of land, and the sales of properties. We must and do recognize the weight and authority of the language appearing in these decisions. But each of these is grounded upon the facts in the case decided. The Court makes no attempt to draw a line of demarcation between trusts and associations, so that organizations of one type are clearly trusts while organizations of another are clearly associations. These proceedings must, therefore, be determined by applying the principles announced by the Supreme Court to our own facts.
The facts respecting the development, improvement, and purchases by the trustees are simple and clear. The development included repairs to roads, levees, and tenant houses. No single new *95 improvement, new building, or new structure of any kind on the entire acreage is disclosed by tbe testimony nor by the large number of documentary exhibits. Purchases of approximately four acres of land were testified to and reasons amply justifying each purchase were given, one for dedication of land to the Illinois State highway system, and the other to' close a local roadhouse and gambling resort which was considered harmful to the trust property. We are unable to find in any activity of the trustees an indication that they were conducting a business for profit. Every activity testified to or otherwise shown by the record squares with the purpose of conserving and protecting the trust corpus until such time as it could be sold or disposed of. See Dauphin Deposit Trust Co., Trustee, 21 B. T. A. 1214.
Respondent points to 96 shares of stock of the Saint Clair Ferry & Transfer Co. referred to in the trust deed of May 22, 1918, as showing that the activities of the trustees included the holding of securities as well as the holding of real estate. It does not appear what disposition was made of these shares, but it is plain that they constituted a part of the original trust corpus. No dividends were reported therefrom during any of the taxable years or periods of either trust. No reference thereto appears in the assets taken over by the Cahokia trust, and we can find no authority in the first trust deed permitting the trustees to deal in stocks, bonds, and other securities. The Cahokia trust agreement permitted the trustees to invest the reserve fund in Government securities, municipal bonds, or a conservative security recommended by one of the five largest banks in Saint Louis. As the reserve fund was created for the purpose of taking care of expenditures that might become necessary for the preservation of the trust corpus and making the property more attractive to those seeking industrial sites, we do not think this limited authority to invest in income-producing securities, pending the use of the money for the purpose intended, has the effect of making an otherwise liquidating trust one for business purposes. No power was granted the trustees to deal in securities other than as mentioned.
The respondent, as we understand his contentions, treats the Cahokia trust as a mere continuation of the Pitzman-Methudy trust. Petitioners make no objection thereto because under their theory either or both trusts existed only for liquidation purposes, and neither is an association taxable as a corporation. But in our opinion the two trusts were separate and distinct from each other. The first trust definitely terminated its existence on May 22, 1928, and by the terms thereof the title to the property immediately vested in the beneficiaries in proportion to their interest in the trust. These co- *96 owners, who had been the beneficiaries of the Pitzman-Methudy trust, were the grantors and beneficiaries of the Cahokia trust. However, such enlargements of the trustees’ powers, as appeal’s from an examination of the trust instruments, did not change a liquidating endeavor into a joint business venture.
In Myers’ Brothers Building Trust v. Commissioner, 89 Fed. (2d) 86, three brothers, owners of improved business property, as tenants in common, erected a new building, obligating themselves on the mortgage indebtedness, and created a trust to facilitate management operation and preservation of the property in which they each retained an equal beneficial interest. The court there held the operation of the trust as a business enterprise was merely incidental to the broader purpose of preservation and convenience in handling and therefore was.a pure trust not taxable as an association. The court said:
Every trust of the present type necessarily has attributes of a business organization. Its very existence depends on such. That characteristic alone cannot brand it as an “association.” If the father of the three Myers brothers had by his will set up a trust estate for their benefit in the precise manner here indicated it would have been almost typical of a traditional type of family trust. We think it none the less so that its creation has been by the three brothers.
In many respects the situation in these proceedings is comparable to that presented in Theron E. Catlin, 25 B. T. A. 834; Selah Chamberlain, 19 B. T. A. 126, and Trudie T. Mwiger, 16 B. T. A. 168. In each of these proceedings we held that the trusts attempted to be created by the owners of property were not actually taxable entities, but were in the nature of agencies created for the more convenient management of property. Stoddard v. Eaton, 22 Fed. (2d) 182. See also, Cleveland Trust Co., Executor, 24 B. T. A. 132; N. H. Boynton, 11 B. T. A. 1352; George L. Craig, 7 B. T. A. 504; Lewis & Co. v. Commissioner, 301 U. S. 385. It might well be argued in these proceedings that the trusts here were more in the nature of agencies for convenient handling and disposition of the property than true trusts in a restricted legal sense. However, petitioners have preferred to rest their case upon the principle that these trusts were liquidating trusts, distributing their proceeds to beneficiaries, who were taxable upon any income resulting from sales and lease rentals. In either view the respondent has erred in determining the trusts were associations taxable as corporations.
Our decision on the legal question makes it unnecessary to go into the question of fact as to values or the question of penalties.
Reviewed by the Board.
Decision will be entered for the petitioners.