COMMISSIONER OF INTERNAL REVENUE v. SECURITY–FIRST NAT. BANK OF LOS ANGELES et al.

No. 10554.

Circuit Court of Appeals, Ninth Circuit.

April 30, 1945.

Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, J. Louis Monarch, Helen Goodner, and Hilbert P. Zarky, Sp. Assts. to Atty. Gen., for petitioner.

A. Calder Mackay, Arthur McGregor, and Howard W. Reynolds, all of Los Angeles, Cal., for respondent.

Before DENMAN, STEPHENS and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

The Commissioner of Internal Revenue seeks review of an order of the Tax Court

holding the organization for which the Security-First National Bank of Los Angeles is trustee is not taxable for the tax years 1937, 1938 and 1939 as an association corporate in essence within the meaning of Section 1001(a) (2) of the Revenue Act of 1936, Section 901(a) (2) of the Revenue Act of 1938, and Section 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797(a) (3).

The parties are agreed in the following description of the organization. In 1922, 62 persons invested $35,000 in cash to pay for Lots 16, 17 and 18 of Block "B" of the Butler Tract in Los Angeles County, California. This land was conveyed to the Pacific-Southwest Trust & Savings Bank (later succeeded by the Security-First National Bank of Los Angeles) to hold in trust for the 62 persons as certificate holders. A declaration of trust was executed, providing in part as follows:

"At the time of the execution of this Declaration of Trust it is contemplated that the property covered hereby will be leased for gas, oil, or mineral products. In order to facilitate the execution of such a lease, it is hereby provided that a committee of five (Beneficiaries herein), be authorized to direct the Trustee herein in the execution of such a lease or any subsequent oil, gas, or mineral lease on said land * * *.

\* \* \* \* \* \*

"It is understood and agreed that the Trustee hereunder shall be entitled to receive any and all royalties or dividends from any gas, oil, or mineral lease covering the trust property. Distribution of all such moneys so received to be made to the Beneficiaries hereunder according to their respective interests herein."

The trustee was given authority to "rent, lease, for other than gas or oil purposes, sell or convey said property or any portion thereof, to such person or persons at such prices and upon such terms as the Beneficiaries representing a seventy (70) per cent holding interest herein may direct in writing, * * *."

The trustee could encumber the trust estate only upon similar approval of 70 per cent in interest of the beneficiaries. The beneficiaries bound themselves, if the funds of the trust should prove insufficient at any time, to pay to the trustee amounts necessary to discharge any debt, cost, or expense of the trust, and the trustee was authorized to assess the beneficiaries therefor.

On September 28, 1922, the trustee, as owner of Lots 16, 17 and 18, and one Butler and his wife as owners of Lots 15, 19, 20, 21, 22 and 23, of Block B, as lessors, executed a community lease to William Loftus, lessee. The lessors were to receive a royalty of 40 per cent, in cash or kind, of all oil and gas produced from the property. The 40 per cent was to be divided two-thirds to the Butlers and one-third to the trustee. The lessee was to operate under the lease at his own expense and the lease was to run for twenty years and as long thereafter as oil, gas, or kindred substances were produced in paying quantities. The lessee assigned the lease to the Federal Producing Company, which quitclaimed Lots 15, 19, 20, 21, 22 and 23 to the Butlers. On November 17, 1924, the lease was modified by eliminating therefrom all but Lots 16, 17 and 18 and, as consideration for the lessee deepening the well, the royalty of 40 per cent was reduced to 16⅔ per cent, one-half of which was payable to the trustee and one-half to the Butlers. On June 15, 1927, the trustee and the Butlers executed a new lease to Loftus and one Graham covering Lot 15, the lease providing for a royalty of 16⅔ per cent, one-half of which was payable to the trustee and one-half to the Butlers.

The committee provided for in the declaration of trust gave written instructions to the trustee with respect to the execution of the two leases and modification of one thereof, as outlined above. One change in the personnel of the committee was made in the manner outlined in the trust deed, occasioned by the death of one of the members of the committee.

The income of the trust was distributable to the beneficiaries according to their respective interests therein, which were evidenced by certificates of interest. These certificates were transferred from time to time. The trustee never encumbered the trust property. It never received any royalty in kind, but received its royalties in cash, and after deducting its fee and other minor expenses of the trust, distributed the balance to the beneficiaries. No formal meetings were ever held by the beneficiaries. The trust had no name, place of business, seal, by-laws, officers or statutory character.

■ The character of the organization as to whether or not it is a "business trust," is determined by what the instruments creating the trust empowered the

trustee to perform, and not by what powers the trustee actually exercised. This appears in Morrissey v. Commissioner of Internal Revenue, 296 U.S. 344, 357, 56 S. Ct. 289, 295, 80 L.Ed. 263, in the words "but the *nature and purpose* of the co-operative undertaking will differentiate it from an ordinary trust," and in the companion case of Helvering v. Coleman-Gilbert, 296 U.S. 369, 374, 56 S.Ct. 285, 287, 80 L.Ed. 278, where the Supreme Court, in speaking of the "purpose" appearing in the instrument creating the trust, states "The parties are not at liberty to say that their *purpose* was other or narrower than that which they formally set forth in the instrument under which their activities were conducted."

Here the trustee was empowered to receive the royalties from the oil and gas leases in kind. This would require it to conduct the business of selling the oil or gas to obtain the cash to be distributed to the beneficiaries. The trustee was also empowered to engage in the business of "rent [ing and] leas[ing the trust property] for other than oil or gas purposes" and sell or convey it outright. The organization was thus purposed to engage in business within the Coleman-Gilbert decision, supra. Cf. Kettleman Hills Royalty Syndicate No. 1 v. Commissioner of Internal Revenue, 9 Cir., 116 F.2d 382, 383, certiorari denied 313 U.S. 582, 61 S.Ct. 1100, 85 L.Ed. 1538.

The organization otherwise complied with the criteria of the Morrissey case, supra, showing it analogous to a corporation (1) holding title to the trust property by the trustee; (2) centralized management in the trustee; (3) continuity of the trust enterprise uninterrupted by the deaths of the owners of the beneficial interests; (4) transferable beneficial interests; and (5) limitation of personal liability of the participants as for the stockholders of a corporation.

With regard to the limitation of personal liability, it is limited to assessments by the trustee on the beneficiaries for no more than "his proper proportion" of the debts and liabilities incurred in the administration of the trust property. The California corporate law comprehends such assessment of corporate shareholders. Section 331 of the Civil Code of California provides in paragraph (1) thereof that "Shares issued by stock corporations are not assessable except as provided in this article. If the articles expressly confer such authority upon the corporation or the board of directors, and subject to any limitations therein contained, the directors may in their discretion, levy and collect assessments upon all shares of any or all classes made subject to assessment by the articles. * * *" Prior to 1930 the California constitution by Article XII, Section 3, made mandatory such proportionate liability of shareholders.

We hold that the organization, as appearing from the instruments creating it, is a business trust and an association corporate in character under the laws for the tax years 1937, 1938, and 1939, supra, and is taxable as such for these years.

There was a decision of the Board of Tax Appeals in 1934, in determining the organization's tax liability for the tax years 1923, 1927 and 1928, that it was not such a business trust. It is admitted that the organization is the same for the tax years now in question. It is claimed that this prior decision of the Board of Tax Appeals is res judicata of the present controversy.

This decision was rendered under Treasury Regulations for those years defining a business trust. All three of the Regulations determining the character of an association as distinguished from a trust state that to constitute an association there must be the active doing of business other than the distributing of income.[1]

---

[1] First sentence of Art. 1504, Regulations 62 under Revenue Act of 1921, controlling for the tax year 1923:

"Art. 1504. Association distinguished from trust.—Where trustees hold real estate subject to a lease and collect the rents, **doing no business other than distributing the income** less taxes and similar expenses to the holders of their receipt certificates, who have no control except the right of filling a vacancy among the trustees and of consenting to a modification of the terms of the trust, no association exists and the cestuis que trust are liable to tax as beneficiaries of a trust the income of which is to be distributed periodically, whether or not at regular intervals * *." (Emphasis supplied.)

First sentence of Art. 1504, Regulations 65 under Revenue Act of 1924, controlling for the tax year 1927:

"Art. 1504. Association distinguished from trust.—Holding trusts, in which the trustees are merely holding property for the collection of the income and its distribution among the beneficiaries, **and are**

The Board of Tax Appeals construed the boldfaced words in the three Regulations set forth in footnote 1 as requiring the actual management of some business by the trustee to constitute the organization an association corporate in character. Under its construction of the Regulations the Board found

"The Trustee never received any royalty in kind, but received its royalties in cash, and after paying its fees and any other expenses of the trust, distributed the balance to the beneficiaries.

"The Trustee never encumbered the trust property * * *.

"No formal meetings were ever held by the beneficiaries * * * After execution of the lease the only activity of the trust was to receive and distribute the income from the lease * * *."

We do not question that this was a proper interpretation of the then Regulations so requiring the *exercise* of business functions by the trustee.

However, in 1936 the Treasury Regulations 94 was amended to make the purposes declared in the creating instruments determinative of the business character of the trust. The amendment added the following: "The nature and purpose of a cooperative undertaking will differentiate it from an ordinary trust. The purpose will not be considered · narrower than that which is formally set forth in the instrument under which the activities of the trust are conducted."

In the case of Tait v. Western Maryland R. R. Co., 289 U.S. 620, 625, 53 S.Ct. 706, 708, 77 L.Ed. 1405, the Supreme Court in discussing the question of res judicata regards it as pertinent that "the regulations issued by the Treasury remained unchanged." We regard this amendment of the Regulations in 1936, governing the Treasury Department for the later tax years, as creating a "new situation," that

referred to in Tait v. Western Md. R. R. Co., supra. "The regulations issued by the Treasury [had not] remained unchanged." It was changed in 1936 to make it comply with the Morrissey and Coleman-Gilbert cases, supra. Thus we have a "new situation" within Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465. Cf. West Coast Life Ins. Co. v. Merced Irr. Dist., 9 Cir., 114 F.2d 654, 659.

Even in the absence of the changed Regulations, the Morrissey and Coleman-Gilbert cases create the same "new situation" defeating the claim of res judicata as was the subsequent decision of the Illinois state court in Blair v. Commissioner, supra. In the Blair case the circuit court of appeals for the seventh circuit had decided that a trust was a spendthrift trust and taxable as to its income to the beneficiary and not to the assignee of the beneficiary's interest in the trust. Subsequently the intermediate appellate court of the State of Illinois, the highest court passing upon that question, held that under the Illinois law it was not a spendthrift trust. It thus appears that at the time of the first decision by the circuit court of appeals, this state law regarding the trust was different from the law as declared in that decision. The Supreme Court held for a subsequent tax year that the Illinois state court decision was a "new situation" which made the decision for the earlier tax year not res judicata for the succeeding tax years.

If we view this from another standpoint, namely, that on the date of the first decision of the United States Circuit Court of Appeals, the Illinois law was then what the circuit court of appeals declared it to be and it was subsequently changed by the action of the state court, the result is no different. If the status of the taxpayer in the instant case was what the Board of Tax Appeals declared it to be at the time of the decision for the tax years 1923,

---

not engaged, either by themselves or in connection with the beneficiaries, in the carrying on of any business, are not associations within the meaning of the law * * *." (Emphasis supplied.)

First sentence of Art. 1314, Regulations 74 under Revenue Act of 1928, controlling for the tax year 1928:

"Art. 1314. Association distinguished from trust.—Where trustees merely hold property for the collection of the income and its distribution among the beneficiaries of the trust, and are not engaged either by themselves or in connection with the beneficiaries in the carrying on of any business, and the beneficiaries have not control over the trust, although their consent may be required for the filling of a vacancy among the trustees or for a modification of the terms of the trust, no association exists, and the trust and the beneficiaries thereof will be subject to tax as provided by sections 161–170 and by articles 861–891 * * *." (Emphasis supplied.)

1927 and 1928, it ceased to be the law when the Supreme Court decided the Morrissey case. The latter decision created a "new situation" identical in character with that of the Blair case. Cf. Hendricksen v. Seward, 9 Cir., 135 F.2d 986, 150 A.L.R. 1, at the paragraph beginning first on page 988; Pelham Hall Co. v. Hassett, 1 Cir., 147 F.2d 63, January 29, 1945, 1945 Prentice-Hall Tax Service, par. 72,350.

The Tax Court erred in not determining that respondents' organization should be taxed for the tax years 1937, 1938 and 1939 as an association within the statutes first above cited.

Reversed.