## UNITED STATES v. HOMECREST TRACT.
### No. 11322.

Circuit Court of Appeals, Ninth Circuit.
March 4, 1947.

Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott, Paul S. McMahon, and Maryhelen Weigle, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and W. E. Licking, Asst. U. S. Atty., both of San Francisco, Calif., for appellant.

Lloyd G. Rainey and J. Everett Blum, both of Los Angeles, Cal., for appellee.

Before GARRECHT, HEALY, and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellee brought an action in the district court for the recovery of income, excess profits, defense and capital stock taxes covering the taxable years 1938 to 1941 which it asserts were erroneously and illegally assessed and collected by appellant. The complaint contained seven separate causes of action, each based upon the same set of facts save as to the year and the kind and amount of the tax paid. The action was submitted to the court below on a written stipulation of facts (to which were attached certain exhibits being copies of a trust agreement and supplement attached thereto) and on oral testimony. The stipulation of facts, together with the exhibits mentioned, were incorporated in the court's findings of fact and each fact so stipulated was by reference found as a fact.

The Government contends that appellee is an association taxable as a corporation because it was organized by an association of individuals as a medium for the carrying on of a business enterprise for profit and it has the salient features of a business trust making it analogous to a corporation. Appellee contends to the contrary, asserting that it was created to secure the repayment of a loan and to liquidate property owned by certain individuals, and not to conduct a business enterprise for profit.

As indicated below, the lower court adopted appellee's view and entered judgment in accordance with the prayer of its complaint.

The facts as stipulated and so appearing may be summarized as follows: In 1926, fourteen persons as trustors entered into a trust agreement (made part of the stipulation of facts) wherein it was provided

that the trustors had caused or would cause to be executed and delivered to the trustee a deed conveying to it certain California real property to be held in trust under certain terms and conditions. These were, briefly: There should be a board of managers consisting of three beneficiaries who should be vested with the powers and duties provided for in the trust, to hold office at the pleasure of the majority of the beneficiaries; any vacancy to be filled by such majority. The trustee was to hold the property as security for the payment to it of the sum of $14,000 as evidenced by a certain promissory note signed by the board of managers, dated January 28, 1926, and for the payment of such other loans and advances as the trustee might make during the continuance of the trust. Each trustor agreed that he, his successors and assigns, would be severally' liable in the proportion set opposite his name as beneficiary, to the trustee for the payment of the balance due.

The trustee was directed to subdivide and improve said real property in such manner as might be agreed upon between the board of managers and the trustee; and was authorized to dedicate to public use all streets and alleys shown upon the subdivision map to be prepared by the board of managers, and to sell the real property by lot or lots free of the lien of the trustee, upon such terms and conditions, to such purchasers, for such prices and payable in the manner as the trustee deemed best, provided that the sale price should not be less than that agreed upon by the trustee and the board or selling agent provided for by the trust, and provided further that the selling price of any parcel should not be less than an amount which bore the same ratio to the balance due as the lots sold bore to the remaining unsold land. The trustee was to distribute the proceeds from the sale of the lots in a certain designated manner, paying costs and expenses of the trustee, real estate commissions, release of any liens, bills approved by the board of managers for labor and material utilized for the improvement of the property, notes to the trustee, and any balance remaining to the beneficiaries as their respective interests might appear.

Any beneficial interest under the trust could be sold or transferred if an executed original of the assignment or other instrument evidencing such sale or transfer was filed with the trustee and any interest could be transferred by decree of any court upon satisfactory proof of the regularity and validity of the proceedings. If any portion of the property should become liable for the payment of taxes, the trustee was to have authority to withhold sufficient money and pay such tax; or if there were no funds available, to pay the taxes and add the amount of the advance to its lien upon the property. The trustors agreed severally on behalf of themselves, their successors and assigns to pay their respective proportions of all liens, encumbrances, taxes, insurance or other charges necessary or proper for the preservation, maintenance or care of the property and the expenses of the trust.

Provisions were made as to default, and at the option of the trustee the property was to be sold to satisfy the debt. Said sale was to be at public auction, either in separate parcels or of the property as a whole in the discretion of the trustee; and the proceeds from the sale were to be applied on the expenses of sale, the debt, and any balance was to be given to the person legally entitled thereto.

The trust was not to terminate in any event until all costs, fees, expenses, liabilities and advances of the trustee, with interest, had been fully paid. If the above condition was met, the beneficiaries could revoke the trust at any time after one year from the date of its creation by notice of revocation at least 60 days prior to the effective date of the proposed revocation; and thereupon reconveyances were to be made to all the beneficiaries under the trust as their respective interest might appear.

A selling agent was designated and the trustee was to execute conveyances or contracts for sale of lots upon the request of the agent (oral testimony disclosed such sales were actually made).

A supplementary agreement substituted the Bank of America as trustee in place

of the former trust company and provided for a change in membership in those who were trustors (beneficiaries).

From the oral testimony it appears that the trust had no offices; it had no officers, except as the board of managers might be so construed to be; the trust issued no shares, or certificates or other evidence of interest therein and had no stock ledger, or stock certificate book or any books in lieu thereof, it had no seal, by-laws or minute book; it had no employees other than the board of managers and the selling agent; and the trust held no meetings.

There was no dispute over the amount of the damages and the district court held that the trust was, and is, not an association taxable as a corporation, within the meaning of Sec. 901(a) (2) of the Revenue Act of 1938,[1] 52 Stat. 447, and Sec. 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3797[2] and allowed recovery of $5,474.97, being all of the taxes paid, together with interests and costs. From that judgment the Government appeals.

■ The principles of law governing this case were laid down by the Supreme Court of the United States in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263.[3] The test is whether the trust deed discloses an association of individuals for the purpose of carrying on a business. This is to be determined from the trust instrument itself—from what *could be done* under the trust and *not from what is done.*[4]

■ Under the trust agreement, fourteen individuals—associates[5]—together conveyed the real estate involved to the trustee; and together they were to share the benefits of the trust. Though money was advanced by the trustee who held the real property as security, security was not the only purpose of the arrangement. The trust deed provided for the improvement of the property in any way, for the survey and platting of the land, for the dedication of streets, for the insurance of buildings, for the borrowing of money, for the payment of taxes, for the collection of rents, and for the sale of individual lots at prices not below a minimum to be set by the board of managers and the trustee. In short, the trust deed provided all the powers needed to develop a real estate subdivision in any manner that might prove profitable.[6]

Further the trust organization complied with the criteria of the Morrissey case,

---

[1] Revenue Act of 1938, "Sec. 901 (a) (2)—the term 'corporation' includes associations, joint-stock companies, and insurance companies."

[2] 26 U.S.C.A. Int.Rev.Code, § 3797. "Definitions. (a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof * * * (3) Corporation. The term 'corporation' includes associations, joint-stock companies, and insurance companies."

[3] See also the companion cases: Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Helvering v. Coleman-Gilbert, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Accord, Sloan v. Commissioner, 9 Cir., 63 F.2d 666; Title Insurance Co. v. Commissioner, 9 Cir., 100 F.2d 482; Kettleman Hills Royalty Syndicate v. Commissioner, 9 Cir., 116 F.2d 382; Porter v. Commissioner, 9 Cir., 130 F.2d 276; Commissioner v. Security First National Bank, 9 Cir., 148 F.2d 937. For an interesting discussion see "Associations Classified as Corporations Under the Internal Revenue Code", by Lloyd M.

Smith, 34 Cal.Law Rev. 261. Our view of the law leads us to the conclusion that Pitzman et al., Trustees, v. Commissioner, 36 B.T.A. 81; Girard Trust Co. v. Commissioner, 34 B.T.A. 1066, are not controlling.

[4] Morrissey v. Commissioner, 296 U.S. 344, 357, 56 S.Ct. 289, 80 L.Ed. 263; Helvering v. Coleman-Gilbert, 296 U.S. 369, 374, 56 S.Ct. 285, 80 L.Ed. 278; Title Ins. & Trust Co. v. Commissioner, 9 Cir., 100 F.2d 482, 485; Commissioner v. Security First Nat. Bank, 9 Cir., 148 F.2d 937, 939; but cf. Willis v. Commissioner, 9 Cir., 58 F.2d 121.

[5] Lewis & Co. v. Commissioner, 301 U.S. 385, 57 S.Ct. 799, 81 L.Ed. 1174, emphasized the necessity of the element of an association. The case at bar can be clearly distinguished from the Lewis case in that here there are a number of individuals entering into the arrangement, and there there was only one. In the Lewis case the element of association was missing.

[6] Though this fact is not essential, it is evident from the size of the income taxes paid that the property was developed in a manner which proved profitable.

supra, showing it analogous to a corporation in that: (a) Management was centralized in the board of managers and the trustee in much the same manner as in a board of directors.[7] (b) The title to the real estate was vested in a single entity—the trustee.[8] (c) The continuity of the organization could not be upset by the death of any beneficiary. (d) Though there were no shares of stock, the beneficial interests were readily transferable, and the trust deed itself provided the equivalent of a stock register. (e) There was limited liability since the personal liability of each trustor was limited to his proportionate share as set out in the trust deed.[9]

Appellee does not undertake to explain why its case is not governed by Treasury Regulations 103, Section 19.3797-3 which is asserted by appellant to be applicable. The language of this section appears under the caption "association distinguished from trust", and we are of the opinion that the terms of the trust agreement in this case bring it within the ambit of the regulation. As pointed out in appellant's brief this regulation for the most part merely paraphrases the controlling language of the Supreme Court and other Federal courts with respect to various provisions and circumstances presented in the cases involving the distinction between an association and an ordinary trust. Cf. Mertens "Law of Federal Income Taxation", Vol. 7-A, section 43.07.

In the instant case the bulk of the record stands on documentary and stipulated evidence. The oral evidence adduced at the trial is not conflicting, nor does it present a question of credibility of the story teller. So the facts are not in dispute. The problem is one of construction of the trust instrument and the application of the taxing statute. The findings of the district court bring this transaction within the express terms of the taxing statute as it is interpreted by the noted regulation.

We conclude that the trust in this case was more than an ordinary trust created for the purpose of protecting or conserving property since its provisions make clear that it was created for purposes far beyond those of mere security or liquidation. While there was no evidence at the trial below as to activities actually engaged in by the trust, the appellee nowhere asserts that the trustee did not exercise all of its powers, functions and duties; we have merely its assertion that the duties were ministerial in nature only. We agree with the Government that except with respect to the capital stock taxes involved it is immaterial whether or not the trust exercised its business purposes. It was empowered to engage in business and the record does not compel the view that business activities were not carried on. On the contrary, it gives rise to the conclusion that the trust activities were sufficient to constitute carrying on business in the tax years involved (see footnote 6). The Morrissey case, supra, stresses the importance of the *purposes* expressed in the governing instrument; in this case, the trust instrument does not clearly and consistently express its dominant purpose to be that of liquidation.

As we view it, the record evidences the creation of a trust possessing the salient features of a business trust analogous to a corporation which was utilized as a medium for carrying on a business enterprise for profit. It therefore comes within the meaning of Section 901(a) (2) of the Revenue Act of 1938 and Section 3797(a) (3) of the Internal Revenue Code, 26 U.S.C.A., Int.Rev.Code, § 3797(a) (3).

The case is remanded with directions to the district court to enter judgment for the appellant.

---

[7] Morrissey v. Commissioner, supra; appellee has relied heavily upon Commissioner v. Gerstle, 9 Cir., 95 F.2d 587. The distinction made by Judge Denman in the later case of Helm & Smith Syndicate v. Commissioner, 9 Cir., 136 F.2d 440, is applicable here.

[8] Although there is no provision for succession, the corporate nature of the trustee provides the element of continuity. In addition the trustors could and did appoint a successor without terminating the trust.

[9] Commissioner v. Security First National Bank, 9 Cir., 148 F.2d 937; cf. Bert v. Helvering, 67 App.D.C. 340, 92 F.2d 491, 494; Helm & Smith Syndicate v. Commissioner, 9 Cir., 136 F.2d 440.