W. P. Halliday and Carolyn W. Halliday, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Mrs. Anne R. Halliday, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 90378, 90379.   Promulgated September 9, 1938.

*John B. Snowden, II, Esq.*, for the petitioners.
*Harry R. Horrow, Esq.*, for the respondent.

**OPINION.**

Hill: Substantially the only issue raised by the pleadings in these consolidated cases is whether or not respondent erred in disallowing deductions of $20,030.66 each claimed by petitioners from gross income for the taxable year, representing their respective proportionate shares of the total loss alleged to have been sustained by the W. P. Halliday estate trust, in which they owned beneficial interests.

The deductions were disallowed by the respondent for the reason that, as stated in the deficiency letter, the trust was held to be taxable as an association. Petitioners contend that the trust was not an

"association" taxable as a corporation, within the meaning of section 801 (a) (2) of the Revenue Act of 1934,[1] because it was a pure or liquidating trust and not a business trust; that, being a revocable trust, the income was taxable to the grantors under sections 166 and 167 of the Revenue Act of 1934,[2] since power was vested in the grantors to revest in themselves title to the corpus of the trust and the income was distributable to them; that, inasmuch as the income of the trust was in such circumstances taxable to the grantors, it follows that they are entitled in computing net income to deduct their proportionate shares of any net loss sustained by the trust; and, since petitioners inherited the beneficial interest in the trust of one of the original grantors, they stand in his shoes and are entitled to deduct their respective proportionate parts of the loss which such original grantor would otherwise have been entitled to deduct.

Respondent contends that the deductions claimed must be disallowed not only because the trust is taxable as an association, but on the additional grounds: (1) That the petitioners have failed to prove the amount of the loss, if any, sustained by the trust in the taxable year; (2) that sections 166 and 167, *supra*, have no application here, since petitioners are not grantors of the trust within the meaning of those sections; and (3) that the quoted statute does not authorize *deductions* by either beneficiaries or grantors for losses sustained by a trust.

We shall confine our discussion in the first instance to the issue as raised in the pleadings, viz., whether respondent erred in denying the

---

[1] SEC. 801. DEFINITIONS.
   (a) When used in this Act—

   \*   \*   \*   \*   \*   \*   \*

   (2) The term "corporation" includes associations, joint-stock companies, and insurance companies.

[2] SEC. 166. REVOCABLE TRUSTS.
   Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—
      (1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or
      (2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,
   then the income of such part of the trust shall be included in computing the net income of the grantor.
   SEC. 167. INCOME FOR BENEFIT OF GRANTOR.
   (a) Where any part of the income of a trust—
      (1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or
      (2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor;

   \*   \*   \*   \*   \*   \*   \*

   then such part of the income of the trust shall be included in computing the net income of the grantor.

claimed deductions on the ground that the W. P. Halliday estate trust is taxable as an "association." Obviously, a decision of this question in the affirmative would dispose of the case and render sections 166 and 167 inapplicable.

Petitioners urge the contention that the trust was merely a convenient device for the liquidation and distribution of the inherited assets among the beneficiaries, and, as indicating that such was the purpose in creating the trust, they point to the recital in the trust instrument that it was agreed to be for the best interests of all concerned that the various properties owned and controlled by W. P. Halliday, deceased, at the time of his death be kept intact and managed as a whole until such time as they could be disposed of advantageously.

In the light of other provisions of the trust agreement, and the facts and circumstances disclosed by the record, we are unable to accept the views of the petitioners as to the motivating purpose of the original grantors in establishing this trust. In determining such purpose, we must look to all pertinent provisions of the trust agreement and the practical interpretation of the parties as exemplified by the actions of the trustees thereunder. And, as stated by the Supreme Court in *Helvering* v. *Coleman-Gilbert Associates,* 296 U. S. 369:

The parties are not at liberty to say that their purpose was other or narrower than that which they formally set forth in the instrument under which their activities were conducted.

No doubt it was contemplated by the parties that the trustees under paragraph "8th" of their agreement might make distributions from time to time whenever they had funds in their hands from sales of personal or real property of the principal of the trust, not required to be used for other purposes specified in the trust agreement. But the making of such distributions was clearly left to the discretion of the trustees; they were authorized but not directed to make them. Furthermore, we think it fairly appears from the record that liquidation and distribution of the corpus did not constitute the primary purpose for which the trust was created.

By the second paragraph of the trust instrument the trustees were vested with exclusive authority to manage, operate, or lease all the real estate constituting a part of the trust premises, and were directed to pay the net income therefrom to the beneficiaries in stated proportions. By the fourth paragraph the trustees were permitted to retain out of net income from the estate such part as they might deem advisable for a working capital or for the development of the properties. In the fifth paragraph the trustees, subject to the instructions of the beneficiaries in certain matters, were given full control and disposition of the estate, and were specifically directed to "endeavor to manage said

estate in such manner as to produce the greatest amount of income consistent with safety." They were empowered to pay taxes and expenses, keep the property insured, represent the beneficiaries in all legal proceedings relating to the premises, with full power to compromise or settle any suits, and to make and execute all necessary agreements. The trustees were also authorized to set aside out of income a sinking fund to maintain the integrity of the principal. And they were given power to sell and convey any part of the property, real or personal, at public or private sale, either for cash or on credit; to make leases for terms not exceeding five years; to borrow money and mortgage the premises to raise funds for the development or extension of the various interests; to rebuild any building destroyed by fire, and to purchase real or personal property, except that the trustees agreed not to make any sales, purchases, or mortgages of $5,000 or over without the consent in writing of a majority in interest of the beneficiaries.

Pursuant to such delegated authority the trustees, during the period of 34 years prior to the taxable year, carried on varied and extensive business enterprises, including the operation for approximately 29 years of the Yellow Bayou Plantation in Arkansas, which comprised 10,000 acres devoted to the cultivation of rice, cotton, and corn, and for such purpose borrowed large amounts of money in addition to the working capital of the trust; they bought and sold properties, including the acquisition of additional assets, not a part of the original corpus, in an amount in excess of $366,000, or more than one-third of the value of the original estate.

The properties and business affairs of the trust were so managed by the trustees that substantial profits were derived during the years 1900 to 1926, both inclusive, except that for the years 1914, 1920, and 1925 comparatively small losses were sustained. From 1900, when the trust began operations, through 1906, total profits of $652,677.71 were earned, or in excess of $93,000 annually, of which total profits the amount of $390,725.65 was distributed to the beneficiaries and the balance of $261,952.06 apparently was retained by the trustees as working capital. During the period from 1900 to 1926, both years inclusive, the trust, after deducting the losses sustained in the three years mentioned above, earned total net profits of $1,685,771.29, or an amount considerably in excess of the value of the original corpus. It sustained losses in the years 1927 to and including the taxable year, except that in 1931 it derived profits of $49,346.49.

At January 1, 1900, the net value of the trust corpus was $1,062,-921.88. From January 1, 1900, to the beginning of the taxable year the trustees distributed to the beneficiaries $1,767,100.65 and, despite the losses sustained in the years 1927 to 1934 (including a loss in the year 1930 of $446,611.99), the capital account still disclosed a credit

balance at the beginning of the taxable year in the amount of $617,804.57.

From a consideration of the foregoing facts, in the light of the powers vested in and the directions given to the trustees by the grantors for the management and operation of the trust, we are unable to conclude that the primary purpose of the grantors was to establish a trust for the liquidation of the inherited properties and the distribution of the proceeds among the beneficiaries, in connection with which the earning of profits would have been merely incidental. In our opinion, this trust was intended to be and was in fact an organization for the carrying on of a business enterprise with centralized management, the principal purpose of which, as stated in the trust agreement, was "to produce the greatest amount of income consistent with safety."

Such conclusion would seem to be supported by the further fact that at the beginning of the taxable year, more than 34 years after the trust was created, the trustees still retained undistributed capital assets of a value in excess of 50 percent of the value of the original corpus. That the trustees were unable, during such an extended period of time, to sell the assets advantageously and distribute the proceeds to the beneficiaries is incredible, if such had been the purpose of the grantors in establishing the trust and the trustees had made any serious efforts to carry out that purpose.

Petitioners argue that not only must a trust be engaged in business for profit but "it must take a quasi-corporate form" in order for it to be taxable as an association under the statute. And in support of their contention that the trust here in question was not quasi-corporate in nature, they point to the facts that the trustees are managers of the trust and do not hold their positions as officers of a corporation; that there has been no regular election of trustees and there is no provision for any regular meeting of the trustees like the meetings of a board of directors of a corporation; no minutes are kept of the actions of the trustees; there have been no meetings of the beneficiaries similar to meetings of the stockholders of a corporation; and no certificates of stock or other evidences of beneficial interests have ever been issued.

This contention can not be sustained. None of the factors mentioned is controlling. As pointed out by the Court in *Morrissey* v. *Commissioner*, 296 U. S. 344:

> While the use of corporate forms may furnish persuasive evidence of the existence of an association, the absence of particular forms, or of the usual terminology of corporations, cannot be regarded as decisive.

In the cited case, the Court in its opinion further stated:

> What, then, are the salient features of a trust—when created and maintained as a medium for the carrying on of a business enterprise and sharing its gains—which may be regarded as making it analogous to a corporate organization? A

corporation, as an entity, holds the title to the property embarked in the corporate undertaking. Trustees, as a continuing body with provision for succession, may afford a corresponding advantage during the existence of the trust. Corporate organization furnishes the opportunity for a centralized management through representatives of the members of the corporation. The designation of trustees, who are charged with the conduct of an enterprise, who act "in much the same manner as directors," may provide a similar scheme, with corresponding effectiveness. Whether the trustees are named in the trust instrument with power to select successors, so as to constitute a self-perpetuating body, or are selected, by, or with the advice of, those beneficially interested in the undertaking, centralization of management analogous to that of corporate activities may be achieved. An enterprise carried on by means of a trust may be secure from termination or interruption by the death of owners of beneficial interests and in this respect their interests are distinguished from those of partners and are akin to the interests of members of a corporation. And the trust type of organization facilitates, as does corporate organization, the transfer of beneficial interests without affecting the continuity of the enterprise, and also the introduction of large numbers of participants. The trust method also permits the limitation of the personal liability of the participants to the property embarked in the undertaking.

All of the essential elements of an association, as stated in the foregoing extract from the Supreme Court's opinion, namely, continuity, centralized management, limited liability, and facilitated transfer of beneficial interests, are present in the instant case. The fact that there was not a large number of participants in the trust involved here is immaterial. In *Helvering* v. *Coleman-Gilbert Associates, supra,* the Court remarked:

The small number of persons in the trust now before us does not present a difference in the legal aspect of their enterprise from the standpoint of the statutory classification. A few persons, as well as many, may form an association to conduct a business for their common profit.

The conclusions reached hereinabove render it unnecessary to discuss the additional grounds urged by respondent in support of his determinations. The deficiencies are approved.

*Judgments will be entered for the respondent.*