Commerce Trust Company, Trustee of the Investors Fund Trust (Series B), formerly the Insured Investors Trust (Series B), under Trust Indenture dated October 25, 1935, between Insured Investors, Incorporated, a Missouri corporation, first party, and said Commerce Trust Company, as Trustee, second party, and the Registered Holders from time to time of the Certificates issued under said Indenture, v. Commissioner. Commerce Trust Company, Trustee of the Investors Fund Trust (Series C), formerly the Insured Investors Trust (Series C), under Trust Indenture dated July 21, 1938, between Insured Investors, Incorporated, a Missouri corporation, first party, and said Commerce Trust Company, as Trustee, second party, and the Registered Holders from time to time of the Certificates issued under said Indenture, v. Commissioner.
Commerce Trust Co. v. Commissioner
Docket Nos. 1141, 1142.
United States Tax Court
1944 Tax Ct. Memo LEXIS 42; 3 T.C.M. (CCH) 1217; T.C.M. (RIA) 44372; November 20, 1944
*42 Delos C. Johns, Esq., 1701 Bryant Bldg., Kansas City, Mo., for the petitioners. John E. Marshall, Esq., for the respondent. ARNOLD
Memorandum Findings of Fact and Opinion ARNOLD, Judge: The Commissioner determined deficiencies in income tax against two separate investment trusts, known as Investors Fund Trust (Series B) and Investors Fund Trust (Series C), for the calendar years 1939, 1940 and 1941. The three-year total of the claimed deficiencies in Docket No. 1141 (Series B) is $7,075.30. In Docket No. 1142 (Series C) the claimed deficiencies total $1,114.11. The issue is the same in both cases and as to all the years involved, i.e., are the petitioners taxable as corporations, as defined in section 3797 of the Internal Revenue Code. Commerce Trust Company, trustee of both trusts, is the moving party in these cases. Petitioners filed their returns with the collector of internal revenue for the sixth district of Missouri, assessing their income tax liabilities at zero. Findings of Fact Commerce Trust Company (hereinafter called Trustee) is a Missouri corporation with its office at Kansas City, Missouri, and is trustee of a trust indenture executed on October 25, 1935, by it and *43 Investors Fund, Incorporated (formerly Insured Investors, Incorporated, and called Depositor), also a Missouri corporation, a nonaffiliate, with separate offices in Kansas City, Missouri. Registered holders from time to time of trust certificates issued under the trust indenture (called Certificate Holders) are also parties to the indenture and bound by its terms. The indenture described herein, together with seven supplements, executed between October 25, 1935 and December 1, 1941, relates to Investors Fund Trust Series B (formerly Insured Investors Trust Fund Series B). Pursuant to the terms of the indenture, the depositor, sponsor of the trust plan, solicited funds from the public for investment in property deposited or to be deposited with the trustee. The plan provides for the issuance of certificates in the face amount of $500 or multiples thereof, which, when properly authenticated and registered by the trustee, are conclusive evidence of the certificate holder's right to participate in the benefits provided by the indenture. To become a certificate holder an application accompanied by a sum representing the first payment, is filed with the depositor. The depositor prepares *44 the certificate, enters the number and the name of the applicant in its register, has it authenticated and registered by the trustee, and then delivers it to the applicant, who thereupon becomes a certificate holder. The certificates are transferable, but only by the registered certificate holders and upon surrender to the depositor of the property assigned or endorsed certificate. The indenture provides four plans of investment, (1) the "Insured Plan" (2) the "Non-Insured Plan"; (3) the "Full Paid Accumulative Plan"; and (4) the "Full Paid Income Plan". The first two plans call for the payment by the certificate holder to the depositor of 120 equal monthly installments in an amount sufficient to equal in the aggregate the face amount of the certificate. The last two plans provide for the deposit of the face amount of the certificate at the time of issuance. Prior to or concurrently with the public offering of any Series B certificates the depositor is required to deposit with the trustee securities, cash, or other property constituting one unit of deposited property. A unit consists of 76 fully paid shares of common stock in 32 companies designated in the indenture (except shares *45 in those companies which may have been eliminated pursuant to the terms of the trust indenture), together with any increment distributable to the holders of record prior to deposit of the securities with the trustee. Each unit of deposited property represents in the aggregate 1,500 undivided equitable interests in the unit, each identical with every other undivided equitable interest in any and every unit of deposited property. The indenture makes no provision for the issuance of any writing evidencing the ownership of undivided equitable interests. They are evidenced only by entries upon the books and records of the trustee. They are not allocated to any particular stock unit but are interests in any such unit held by the trustee. Provision is made in the indenture for the creation of additional units of deposited property from time to time in the manner described above. The depositor keeps a ledger account in the name of each certificate holder which reflects his payments and interests in the trust property. A daily report is made by the depositor to the trustee showing net payments received on that day from certificate holders, and these payments are deposited with the trustee. *46 The net payments equal the gross payments made by the certificate holders less deductions of certain charges by the depositor, including a diversification fee of 8 percent of the cost of each stock unit. When shares of stock comprising a unit or units of property are to be purchased, the depositor acting for the trustee directs and arranges for the purchase thereof. The purchased shares are issued in the name of the trustee or its nominee, delivery of the stock certificates, is made by the stock broker directly to the trustee, and the trustee makes the required payment to the broker. Concurrently therewith, the depositor furnishes to the trustee a deposit certificate showing the aggregate cost price of the unit or units of deposited property so purchased and deposited and the cost price of each equitable interest representing such unit or units. Entries are made on the ledger accounts of the respective certificate holders by the depositor and the trustee, allocating the equitable interests to the certificate holders whose payments are being invested. The number of equitable interests in a unit of deposited property allocable to each certificate holder is dependent upon the net amount *47 available for investment of each certificate holder and upon the cost price of the constituent securities, which cost price is determined from day to day and is dependent upon market value of the constituent securities as of the close of the New York Stock Exchange each day. The trustee retains as "currently distributable funds" all cash received as dividends or distributions with respect to the deposited property; the net cash proceeds received from the sale of stock dividends, subscription rights, security or other rights and property deposited with the trustee all cash deposited with the trustee by the depositor pursuant to the creation of additional units of deposited property and all net cash proceeds of sales of any securities and other property required to be sold pursuant to the provisions of the trust indenture. Distributions of such funds are to be made quarterly by the trustee to the depositor for the account of the certificate holders. Except as to certificate holders under the full paid income plan, the proportionate amount of distribution due each certificate holder is credited to his account by the depositor and is invested (or reinvested in case of distribution of *48 proceeds from sales of trust property) in the maximum number of additional undivided equitable interests in the trust property purchasable with such credit. A certificate holder is entitled to receive from the depositor at any time his proportionate deliverable share of the deposited property or the market value thereof in accordance with terms specified in the trust indenture. The trustee has the full and absolute authority to exercise all rights and privileges pertaining to any of the deposited property held by it as trustee under the trust indenture that could be taken or exercised by the absolute owner thereof. Upon written order of the depositor the trustee is obligated to sell all distributions accruing to the stock of any of the constituent companies by reason of stock rights, stock dividends, stock split-ups or as a result of mergers, consolidations, reclassifications of shares of stock of the constituent companies or any other proceeding, such sales to be made as soon as practicable after said distribution. The depositor is to be guided in directing such sales by the desire to maintain the shares of stock of each constituent company in the stock units in substantially *49 their original proportion insofar as such maintenance is practical. No substitution or change may be made in the shares of stock of the constituent companies comprising the stock units except in the event of merger, consolidation or reclassification of the shares of stock of the constituent companies or in event such shares are to be eliminated from the stock units. Shares of stock of the constituent companies may be eliminated from stock units by the trustee upon written order of the depositor (1) when shares of stock of such companies are unavailable for purchase, or (2) when the depositor is of the opinion that stock of the constituent company is unsatisfactory because of the condition of the constituent company or the industry concerned from a long time investment standpoint, but then only after written advice for such sale has been procured from three recognized independent, investment counselors. A stock is deemed unavailable for purchase if the depositor has made an effort without success for a period of five business days to purchase the desired quantity. The depositor may further direct the trustee in case of the happening of any event not specified in the trust indenture *50 to take such action with respect to the trust property, not inconsistent with the express provisions of the trust indenture, as necessary in the exercise of its discretion for the protection of the interest of the certificate holders. A "revolving fund" is to be maintained by the depositor with the trustee to be held in a special account for the purpose of making cash payments to any certificate holders who withdraw from the trust. An "equalization fund" is maintained by the trustee to absorb all gains or losses accruing or realized by the "revolving fund" by reason of differences in the market value at which the "revolving fund" acquires undivided equitable interests in the deposited property and the cost price at which the undivided equitable interests are subsequently allocated from time to time to the accounts of the certificate holders, including the differences due to fluctuation in the market value or price of stock contained in the stock units, fluctuations or variations in the amount of odd lot premiums, brokerage commissions, taxes, etc. Profits realized from the "equalization fund" inure to the benefit of the certificate holders. On December 29, 1939, the trustee acting *51 pursuant to the directions of the depositor sold all shares of American Power and Light Company, Atchison, Topeka and Santa Fe Railway, Columbia Gas and Electric Corporation, and Socony Vacuum Oil Company then constituting part of the deposited property. The shares were sold and eliminated from the deposited property pursuant to the provisions of the trust indenture. The trustee has never purchased any stock or other securities other than the stocks provided in the indenture and those only in the proportions specified in the indenture. In addition to the stock eliminated, the trustee has sold shares of stock and stock rights received as stock dividends and stock split-ups of deposited property. The proceeds from such sales were treated as "currently distributable funds." The trust created by the trust indenture may be terminated by the trustee only in event all the certificates issued under the trust have been surrendered, the trustee resigns and a successor trustee is appointed, the depositor fails or refuses to perform in accordance with the trust indenture, or in event the depositor shall be dissolved, liquidated or wound up, or cease business, or be adjudicated a bankrupt. The *52 death or incapacity of any certificate holder does not terminate the trust nor entitle his legal representative to claim any accounting or proceeding for a partition or winding up of the trust. The trustee or any successor to the trustee may be removed and a successor appointed at any time by an instrument in writing signed by the depositor, or an instrument or concurrent instruments in writing signed by the holders of not less than three-fourths in amount of the certificates issued under the indenture and then outstanding. If neither the depositor nor the certificate holders appoint a successor trustee within a reasonable time such appointment may be made by any court of competent jurisdiction upon application of any certificate holder or of the trustee last in office. The depositor and the trustee may join in executing supplemental trust indentures at any time and may operate thereunder. However, if such supplemental indentures would affect adversely the rights and privileges of the certificate holders, the supplemental indenture must be approved by the certificate holders holding a majority in face amount of the certificates then issued. During the calendar years 1939, 1940 *53 and 1941, net payments of certificate holders were deposited with the trustee aggregating the respective amounts of $2,313,044.77, $270,355.24 and $217,613.78. During those years certificate holders who surrendered and liquidated their certificates received from the trustee cash or its equivalent in the respective amounts of $171,935.34, $206,718.58 and $171,978.78. At the end of the calendar years 1939, 1940 and 1941 there were, respectively, 486, 521 and 569 units of deposited property in the hands of the trustee. The material facts concerning Investors Fund Trust (Series C), Docket No. 1142, are substantially the same as those hereinbefore set forth concerning Investors Fund Trust (Series B) except that the trust indenture therein dated July 21, 1938, together with eight supplements executed between June 1, 1939 and December 31, 1941, relates to Investors Fund Trust (Series C). The amendments to the indentures are all mechanical and administrative in nature. None of the amendments affected adversely the substantive rights of the certificate holders. They were all made under provisions of the original indentures which permitted the depositor and the trustee to amend the indentures *54 so long as the rights, powers and privileges of the certificate holders were not adversely affected. At no time has any proposition, proposal or question been submitted to the certificate holders for decision. The certificate holders have never met nor perfected an organization of any kind. They have never exercised by any method any control over the trust or the deposited property; they have never directed any action, nor vetoed any proposed action. No provision is made in the indenture for the exercise by the certificate holders of any such rights or powers, except that they may, by three-fourths vote in amount of certificates, remove the trustee. There is no power in the depositor, the trustee, or both combined in the management of trust affairs beyond those necessary for the preservation of trust property, the collection of income therefrom and its distribution to the certificate holders. Opinion These cases in all material respects are similar to Commissioner v. Chase National Bank of the City of New York (CCA-2), 122 Fed. (2d) 540. The following language, taken from the opinion in that case, applies with equal force to the facts before us: *55 In determining the character of these trusts the powers and duties of the trustee should be added to those of the depositor in order to arrive at the full amount of permitted managerial activity and its object. When that is done we find the permitted activities could, and the actual activities did, affect the property held in trust only by weeding out whatever became unsound for investment and retaining the remainder. That, we think, prevented the trusts from being, or becoming more than what are sometimes called strict investment trusts. What they were when created is determinable from the trust agreements and the application of the principles set forth in Morrissey v. Commissioner, 296 U.S. 344, 56 S. Ct. 289, 80 L. Ed. 263, leads to the conclusion, in support of the Board's decision, that the trust property was to be held for investment and not to be used as capital in the transaction of business for profit like a corporation organized for such a purpose. This distinction is what makes the difference tax-wise. Sears, Trustee, v. Hassett, 1 Cir. 111 Fed. (2d), 961. * * * The Board, on ample *56 evidence, found that there was no exercise by the trustee, the depositor, or both combined of "any powers beyond those which are necessary incidents to the preservation of trust property, the collection of income therefrom and its distribution to the holders of trust shares." That being so, these trusts do not fall within the statute upon which the Commissioner relies. The Chase National Bank case has subsequently been relied upon as authority in Commissioner v. Buckley, 128 Fed. (2d) 124, by the Ninth Circuit Court of Appeals. See also Equitable Trust Co. v. Magruder, 37 Fed. Supp. 711. Commissioner v. North American Bond Trust, 122 Fed. (2d) 545, is distinguishable here as it was distinguishable from the Chase National Bank case, since there "the 'Depositor' had it in his power in effect to change the investment of certificate holders at his discretion * * *." The depositor there in making up new units for deposit "was not confined to the same bonds that he had selected for the first * * *." Pennsylvania Company for Insurance of Lives and Granting Annuities et al., v. United States, 138 Fed. (2d) 869, *57 is distinguishable in the same manner. Petitioners, on brief, cite several memorandum decisions of the Tax Court in which the principles of the Chase National Bank case were followed. One such case, City National Bank & Trust Co., Trustee, Docket No. 106311, decided March 8, 1943, has since been reversed by the Tenth Circuit Court of Appeals. [1] However, in that case the circuit court said: * * * It is not necessary to the decision of this case to adopt or reject the doctrine of the Chase National Bank case. The cases are clearly distinguishable upon the facts, * * *. * * * * *
The Tax Court in the present case found and emphasized the fact that managers of the trust did not exercise any powers beyond those which were necessary incidents to the preservation of trust property, the collection of income therefrom, and its distribution to the beneficiaries. The character of the association is, however, determined from the instrument, and it is no defense to say that the managers did not exercise all the powers set forth in the declaration of trust. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369. *58 The court thus notes that it is the existence of powers in the indenture, not their exercise, which governs the tax status, and the existence of such powers is the reason ascribed for the decision in that case. The instant cases can not be so distinguished from the Chase National Bank case. Here there exist no "powers beyond those which were necessary incidents to the preservation of trust property, the collection of income therefrom, and its distribution to the beneficiaries." nThe language in the City National Bank & Trust Co. case, therefore, would exclude these cases from the bounds of that decision. Decision will be entered for petitioners. Footnotes
1. Commissioner v. City National Bank & Trust Co., Trustee, 142 Fed. (2d) 771, certiorari denied 323 U.S. 764↩.