Michigan Avenue Syndicate, and Flora H. Ellinger, John A. Holabird, and John W. Ruettinger, Trustee v. Commissioner.
Michigan Ave. Syndicate v. Commissioner
Docket No. 3136.
United States Tax Court
1945 Tax Ct. Memo LEXIS 130; 4 T.C.M. (CCH) 760; T.C.M. (RIA) 45338; June 29, 1945
*130 Arnold R. Baar, Esq., 11 S. La Salle St., Chicago 3, Ill., for the petitioner. Edward C. Adams, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in petitioners' income tax for the calendar year 1939 in the amount of $13,438.64. After this proceeding was instituted, petitioners made an additional payment in the amount of $5,000 on account of the tax, and amended their petition at the hearing to ask for a determination that there had been an overpayment of tax in the amount of $5,000. The only question involved is whether petitioners constitute an association taxable as a corporation under section 3797 (a) (3) of the Internal Revenue Code, as determined by respondent. Findings of Fact Those facts which were stipulated are found to be as stipulated. They are incorporated in these findings, together with such additional facts, established by the oral and documentary evidence, to the extent necessary to an understanding of the question here presented. A fiduciary income tax return for 1939 was filed with the collector of internal revenue for the first district of Illinois, *131 at Chicago, in the name of "Michigan Avenue Syndicate, Mrs. Flora H. Ellinger, E. A. Renwick, and John A. Holabird, Trustees". In July of 1912, eight individuals purchased a parcel of real estate in the City of Chicago, improved with an eight story store, office and loft building. Title to the property was taken in the name of one of the individuals, named Levinson. The purchase price was $1,225,000, of which $150,000 was paid in cash by the eight purchasers. The balance was borrowed from. and secured by a mortgage given to the Chicago Title and Trust Company. Subsequent to that time, extensive alternations and remodeling were undertaken, and certain leases were executed with tenants for occupation of the building. Thereafter, in July of 1914, a syndicate agreement was executed between Levinson, who held the title, all of the other purchasers individually, and three of their number, designated as trustees. The agreement was long and complicated, and need not be set out in full here. It provided that "it is the desire of all the parties hereto that the title to said property shall be held by certain parties as trustees for the use and benefit of the persons interested in the net *132 avails and proceeds arising from said property * * *." Title was transferred to the trustees, and all of the acts and contracts which had been done and entered into by Levinson theretofore in connection with the property were ratified and confirmed. The powers conferred on the trustees were of the most comprehensive kind, and included the power to manage, control, rebuild, build a new building, lease for long term, and sell. This agreement was amended several times in subsequent years, in particulars which are not now important, and there occurred some changes in trustees and beneficiaries. The property was operated by the trustees, partly through the agency of a real estate management firm, until 1928. For the tax years 1924, 1925, and 1926, it was adjudicated that the trust was an association taxable as a corporation for income tax purposes. On May 1, 1928, the entire property was turned over to F. W. Woolworth Co., under a 99-year lease. This lease, which is still in effect, was a "net lease", under which the lessee assumes the responsibility for the maintenance, operation and insurance of the property, and for the payment of the real estate taxes. After that date, the trustees *133 no longer managed or operated the property. They received the rents, paid the interest on the mortgage, made certain permitted payments on the principal, and arranged for an extension of the mortgage in 1932, paid income tax and engaged counsel to handle tax matters, and made monthly distributions of available funds to the beneficiaries. This situation has obtained during all the years after 1928 through the tax year involved here. On December 5, 1938, the trustees adopted resolutions containing the following language: "The undersigned, being all of the Trustees of the trust estate known as the MICHIGAN AVENUE SYNDICATE, acting under trust agreement of July 1, 1914, as amended, do hereby certify that they were present at a meeting of such Trustees, held at 333 North Michigan Avenue, Chicago, Illinois, on Monday, December 5, 1938, at 11:00 A.M., and that at such meeting the following action was taken. "Upon motion duly made and seconded, the following resolution was unanimously adopted by the Trustees: "WHEREAS, the question has now been raised by the Bureau of Internal Revenue of the Treasury Department of the United States whether or not the said trust estate is an 'association', *134 taxable as a corporation under the Federal income tax laws, upon the possible ground that the said trust has not effectively changed its character or status merely by leasing its property and changing the character of its operations; and it is desirable to take definite action to change the character and status of the said trust estate, by changing the terms and provisions of the controlling trust agreement to conform to the practices and activities of the trust as now actually being conducted, so that, whatever its present status, at least for the future this trust shall not be classified as an 'association' under the Federal income tax laws; and it is desirable to effectuate such action within the month of December, 1938, so that, if the said trust estate has heretofore been such an 'association', the provisions of section 112 (b) (7) of the Revenue Act of 1938 shall be applicable to whatever liquidation thereof, if any, may result from such change of status as may be accomplished by such action; "NOW, THEREFORE, BE IT "RESOLVED, that a plan for the complete liquidation of the MICHIGAN AVENUE SYNDICATE, as an 'association' under the Federal income tax laws, if it is properly *135 so classified, be and the same is hereby adopted, such liquidation to be accomplished in compliance with the terms and conditions of Section 112 (b) (7) of the Revenue Act of 1938 so far as applicable to the situation of this trust, and to be effectuated by amendment of the trust agreement, as heretofore amended and modified, under which the Trustees of this trust are now acting, whereby in lieu of the present trust agreement, as heretofore amended and modified, there shall be substituted an entirely new trust agreement under which the Trustees shall have no power or authority to carry on a business but shall be authorized only to hold the property of the trust estate, collect the income, proceeds and avails thereof, pay all expenses and charges incurred in the administration of the trust, and distribute among the Beneficiaries the net income, proceeds and avails of the trust estate; and by such liquidation all the property and assets of the trust estate, real and personal and tangible and intangible, shall be transferred from the Trustees, acting under the trust agreement of July 1, 1914, as heretofore amended and modified, if an 'association', to the same persons acting as trustees *136 on behalf of the beneficiaries hereof under the trust agreement as to be amended, and such transfer shall be in complete cancellation and redemption of all shares of said MICHIGAN AVENUE SYNDICATE as an 'association,' if property so classified, and the certificates of beneficial interest now outstanding shall hereafter represent shares of beneficial interest in the trust estate held under the said trust agreement as amended in pursuance of this plan. "And be it further "RESOLVED, that the Trustees suggest and recommend to the Beneficiaries of this trust estate that they approve and adopt and effectuate the plan of liquidation above described, and authorize and adopt the amendment of the said trust agreement in pursuance thereof, by executing an appropriate instrument after the same shall have been approved and submitted to them by the Trustees, and by executing and filing with the Bureau of Internal Revenue such consents and other documents, and by incorporating in their income tax returns such items and schedules and statements, as may be necessary or appropriate to effectuate such amendment and liquidation, in compliance with Section 112 (b) (7) of the Revenue Act of 1938." *137 * * * * *
Under date of December 27, 1938, all the beneficiaries, and the trustees, as such executed an amendment to the trust agreement, set out in part as follows: "WHEREAS, at this time the said trust estate consists almost entirely of certain real estate, hereinafter described, held by the Second Parties, as Trustees, which is subject to a certain mortgage and is also subject to a certain long term lease, expiring April 30, 2027 * * *. "WHEREAS, the question has now been raised by the Bureau of Internal Revenue of the Treasury Department of the United States whether or not the said trust estate is an 'association,' taxable as a corporation under the Federal income tax laws, upon the possible ground that the said trust has not effectively changed its character or status merely by leasing its property and changing the character of its operations; and it is desirable to take definite action to change the character and status of the said trust estate, by changing the terms and provisions of the controlling trust agreement to conform to the practices and activities of the trust as now actually being conducted, so that, whatever its present status, at least for the future this *138 trust shall not be classified as an 'association' under the Federal income tax laws; and it is desirable to effectuate such action within the month of December, 1938, so that, if the said trust estate has heretofore been such an 'association,' the provisions of Section 112 (b) (7) of the Revenue Act of 1938 shall be applicable to whatever liquidation thereof, if any, may result from such change of status as may be accomplished by this agreement * * *. "NOW, THEREFORE, it is agreed by and between the parties hereto; (a) that the above mentioned trust agreement dated July 1, 1914, as heretofore amended and modified, shall be and the same is hereby further amended by striking out and eliminating therefrom all of the various provisions therein contained and by substituting in lieu thereof the following provisions, which, from and after the date of this agreement, shall constitute and express all of the terms under which the said trust estate shall be held; (b) and that, in pursuance of a plan, hereby adopted, for the complete liquidation of the said trust as an 'association' under the Federal income tax laws, if it is properly so classified, all the property and assets of the trust estate, *139 real and personal and tangible and intangible, are hereby transferred from the Second Parties hereto, as Trustees under the said trust agreement dated July 1, 1914, as heretofore amended and modified, if an 'association', to the said Second Parties as Trustees under this agreement, as joint tenants and not as tenants in common; (c) and such transfer shall be in complete cancellation and redemption of all shares of said MICHIGAN AVENUE SYNDICATE as an 'association,' if properly so classified * * *. "(3) Interests of Beneficiaries. The interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the earnings, avails, and proceeds from rentals and other income and from mortgages, sales, or other disposition of the property of the trust estate. Such interest shall be deemed to be personal property and may be assigned and transferred as such, subject to the provisions hereof. In case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically *140 provided, pass to his or her executor or administrator and not to his or her heirs at law, and no beneficiary and no widower, widow, heir, devisee or legatee or any beneficiary shall have any right of dower, inheritance, homestead, partition, or any other real property right, statutory or otherwise, in any property whatsoever forming a part of the trust estate. The death of any beneficiary hereunder shall not terminate the trust nor in any manner affect the powers of the Trustees hereunder. The rights of the Beneficiaries under this agreement shall be solely against and through the Trustees, and no beneficiary hereunder now has or at any time shall have any right, title or interest in or to or any claim against any portion of any real estate or other property of the trust, as such, either legal or equitable, but only a power of direction and control and an interest in the earnings, avails and proceeds, as aforesaid. The rights of all of the Beneficiaries hereunder shall be subject to all of the terms and provisions of this agreement, and all such Beneficiaries, and their successors or assigns, shall be bound by all the provisions hereof, and by all amendments and modifications hereof *141 made in accordance with the provisions hereof. * * * * *
"(5) Administration of the Trust. Subject to the control and direction of the beneficiaries hereunder, the said Trustees shall hold, conserve, protect and maintain all the property of the trust estate, including the real estate above described and any and all buildings and improvements thereon, and shall collect all rents from said real estate and all other income, proceeds and avails of the trust estate and shall pay and discharge all taxes, assessments, and public charges of every kind and nature whatsoever assessed against or imposed upon the trust or the trust estate or themselves as Trustees thereof and any and all costs, charges and expenses of any description connected with or growing out of the execution of this trust or incurred in the administration of this trust, as the Trustees in their discretion may deem necessary, proper, or advisable. The said Trustees, however, will at all times deal with the said real estate and with any and all other property of the trust estate in accordance with such instructions or authorizations as may from time to time be given to them in writing signed by all of the then beneficiaries *142 hereunder, or by their respective agents, thereunto lawfully authorized, provided, however, that the Trustees shall not be required to enter into any personal obligation or liability in dealing with any property of the trust estate nor to make themselves liable for any damages, costs, expenses, fines or penalties. The Trustees shall not be required to inquire into the propriety of any such authorization or direction. The Beneficiaries hereunder, in their own right, shall have the full management and control of the property of the trust estate and of the renting, selling, and other disposition thereof. However, no beneficiary or beneficiaries hereunder shall have any authority to contract for or in the name of the Trustees or the trust estate or to bind or in any way obligate any trustee personally or the trust estate or the Trustees as such. "(6) Distribution of Trust Income and Avails. All income received by the Trustees, and the proceeds of any assets converted into money, and all money at any time received or held by the Trustees, after deducting all expenses and charges paid or properly payable therefrom, shall be distributed and paid by the Trustees as soon as convenient among *143 and to the Beneficiaries hereunder, in proportion to their respective interests, except that the Trustees may in their discretion reserve or retain any portion of such income or money, as they may deem advisable, for the payment of any expenses or liabilities of the Trust, present or anticipated, contingent or otherwise. Funds so reserved may at any time thereafter, in the discretion of the Trustees, be distributed among and paid to the Beneficiaries. "(7) Investment of Trust Funds. The Trustees shall make no investments of any money or funds in their hands, except as herein provided, but all funds or money not distributed shall be held on deposit to the credit of the Trustees or may be used for the purchase of time certificates of deposit. * * * * *
"(12) Resignation of Trustee. Any trustee hereunder may at any time resign as such trustee by delivering to the remaining trustees, by mail or otherwise, a written instrument to that effect, executed and acknowledged by him in the manner in which deeds of real estate may at such time be executed and acknowledged under the laws of the State of Illinois. * * * * *
"(15) Duration and Termination of Trust. The term of this *144 trust shall extend to and including July 1, 1952, unless sooner terminated or further extended as herein provided. The duration of this trust may at any time be extended beyond July, 1952, by amendment of this trust agreement, effected as hereinafter provided. At any time when all of the Trustees acting hereunder shall so determine, or when the Beneficiaries holding three-fourths or more of the beneficial interest hereunder, shall in writing so direct, this trust shall be terminated and all the property or assets then held by the Trustees shall be distributed among and conveyed and delivered to the Beneficiaries, in proportion to their respective interest, or to a trustee or trustees on their behalf, subject to all debts and liabilities of the trust estate not theretofore paid or discharged." * * * * *
There was no distribution of assets or conveyance of real or personal property in connection with these actions, and the 1938 amendment has not been recorded, nor was there any physical cancellation of the shares of beneficial interest then outstanding. Mrs. Ellinger, one of the trustees, was designated as "Secretary" of the syndicate in 1920, and she acted as such during the *145 tax years. She employed a secretary, to whom the syndicate paid $50 a month for handling the affairs of the syndicate. During 1939, petitioners were not an association taxable as a corporation. An overpayment of tax has been made by petitioners, in the amount of $5,000. Opinion KERN, Judge: The single question which claims our attention in this proceeding is whether petitioners are an association taxable as a corporation under the provisions of section 2797 (a) (3) of the Internal Revenue Code. There is no doubt that in its earlier years, the syndicate was so taxable. The trustees operated the syndicate property under an agreement giving them powers of such magnitude that they could and did conduct a business enterprise, in a form fairly comparable to a corporate organization. In 1928, however, when a 99-year net lease, executed four years earlier, became effective, the actual operations of the trustees were instantly curtailed to a point where, in effect, they did no more than receive the rents, make interest and principal payments on the mortgage, and distribute the balance to the beneficial owners of the property. However, no change was made in *146 the trust instrument affecting the powers of the trustees. Late in 1935, the Supreme Court of the United States decided Morrissey v. Commissioner, 296 U.S. 344, and related cases. In Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, the Court held that the purpose of a trust is to be determined from the instrument creating it, rather than from the activities of the trust. The resolution of the trustees, and the amendment to the trust agreement, both dated December, 1938, recite that the Commissioner of Internal Revenue had raised the question whether the trust was an association taxable as a corporation. Since the trustees were still operating, although to a greatly restricted extent, under the very broad powers of the original syndicate agreement, it was thought desirable that the provisions of the controlling trust agreement be changed to conform to the practices and activities in which the trustees were then actually engaged. The trust agreement was thereupon amended by striking out all of its provisions, and substituting therefor wholly new provisions. These, briefly stated, recited that the trust estate consists almost entirely of one piece of real *147 estate which was subject to a mortgage and a long-term lease, and that the duties of the trustees consisted exclusively of the holding of the real estate, collection of the rentals, the incidental administration of the trust estate, the payment of expenses, and the distribution of the net income to the beneficiaries. The amendment reposed in the trustees these powers: to hold title to the real estate, conserve, protect and maintain the trust property, collect the income therefrom, pay expenses of the trust, and distribute all moneys received from any source, after making the payments authorized, to the beneficiaries. The trustees were given no power to invest any of the trust funds. The power to manage and control the trust estate, and to control the renting, selling or other disposition thereof reposed in the beneficiaries according to the express terms of the amendment. These pertinent provisions were also contained in the amendment: the interests of the beneficiaries were described as personal property, which, upon the death of an owner, would pass to his executor or administrator, such interests were transferable, the death of a beneficiary should not terminate the trust; neither *148 the trustees nor the beneficiaries were to be personally liable for any debt or liability of the trust; the trustees were to receive no compensation for their services, as such; in the event of a vacancy in the trustees, the remaining trustees should exercise the powers and duties of the trustees, and should fill the vacancy; the term of the trust was extended to 1932, unless sooner terminated or further extended, either of which, and any other amendment could be accomplished by direction of beneficiaries holding three-fourths of the beneficial interests. We have, then, in 1939, a situation where the trustees hold and conserve the trust property and receive and distribute the income therefrom, under an instrument empowering them to do nothing more. Therefore, they are not subject to taxation as a corporation. Sears, et al. v. Hassett, 45 Fed. Supp. 772; Cleveland Trust Co. v. Commissioner, 115 Fed. (2d) 481, 483, certiorari denied 312 U.S. 704; Hugh MacRae Land Trust, 1 T.C. 899; State National Bank of El Paso, 55 Fed. Supp. 457. We agree with respondent that the attempts to conditionally "liquidate" the association, *149 found in the 1938 documents were ineffective, since no liquidation, in fact, was undertaken. But an association taxable as a corporation is not a corporation. It is taxable as a corporation because it has features substantially resembling a corporation. If those features are effectively removed as was the case here, the resemblance to a corporation to that extent disappears, and with it the justification for taxing it as a corporation. No formal liquidation would be necessary. The organization under which petitioners operated bears some resemblance to a corporate form. But resemblance to corporate form is not sufficient to justify taxing the trust as a corporation. There must be either the conduct of a business enterprise in that form, or the power to conduct a business enterprise, and we have concluded that the trust involved in this proceeding was not, in 1939, engaged in the conduct of a business enterprise and did not have the power to conduct a business enterprise. In Title Insurance and Trust Co. v. Commissioner, 100 Fed. (2d) 482, cited by respondent, the Court held the trust taxable as a corporation, even though its activities in the tax year were the collection *150 and distribution of rents from leased property, the payment of taxes, etc. But there the trust instrument giving the trustees broad powers was still in effect. And in Sherman v. Commissioner, 146 Fed. (2d) 219, the Court pointed in the opinion to the existence of powers under the trust instrument, and to the acts of the trustees beyond the collection and distribution of rents from the trust property. In United States v. Trust No. BI. 35, 107 Fed. (2d) 22, the Court held the trust was engaged in the business of storage, transportation and sale of oil for profit, even though much of the activity was conducted through an agent. Sibley Syndicate v. Commissioner, 131 Fed. (2d) 224, was organized for the purpose of purchasing land for subdivision and resale. Lee H. Marshall Heirs, v. Commissioner, 111 Fed. (2d) 935, certiorari denied 311 U.S. 658, was decided on the basis of the existence of the powers of the trust instrument. In Commissioner v. Vandegrift Realty and Investment Co., 82 Fed. (2d) 387, the broad powers vested in the trustees by the trust instrument were relied on by the Court in its holding that *151 the trust was taxable as a corporation. Decision will be entered for the petitioners.