Hoersting Family Trust, Albert J. Hoersting and Eleanor Sherman, Trustees v. Commissioner.
Family Trust v. Commissioner
Docket No. 4630.
United States Tax Court
1945 Tax Ct. Memo LEXIS 112; 4 T.C.M. (CCH) 810; T.C.M. (RIA) 45260; July 26, 1945
*112 Henry A. Kalcheim, Esq., 180 West Washington St., Chicago, Ill. Thomas L. Tallentire, Esq., and Edward R. Dorr, Esq., for the petitioner. W. W. Kerr, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent has determined deficiencies as follows: Declared
Value
Excess-
Income
Excess-
Profits
Year
Tax
Profits Tax
Tax
August 20, 1940
to December
31, 1940
$1,193.76
$1,002.64
1941
3,003.37
2,221.90
1,474.44
By the petition, numerous issues are raised. However, upon the hearing, proof was directed to only one of these, and this issue alone was briefed by counsel for petitioner. We accordingly conclude that the other issues are abandoned. The one issue thus presented is the correctness of respondent's action in determining petitioner to be an association within section 3797 (a) (3), I.R.C.
Findings of Fact Petitioner was formed August 20, 1940 under a conveyance in trust executed by Hilda Plunkett, Albert J. Hoersting, Florence Quinnan, Frank L. Hoersting, Eleanor F. Sherman, Marie Daugherty, Louis J. Hoersting and Leo. H. Hoersting. These individuals *113 are brothers and sisters. Petitioner's place of business is at 220 Victor Avenue, Dayton, Ohio. Its returns for the taxable periods here involved were filed with the collector of internal revenue for the first district of Ohio, at Dayton, Ohio. By the trust conveyance title to certain properties was vested in Albert J. Hoersting and Eleanor F. Sherman as trustees. The properties consisted of 74 1/2 shares of common stock of The Hoersting & Holtmann Co., 243 shares of common stock of The Cincinnati Stamping Co., a 1/5 interest in Cincinnati Stamping Co., an alleged partnership, and 6 parcels of real estate. The purposes of the organization and powers and duties of the trustees are by the instrument set out as follows: "1. All and any of the income derived from the above described property shall be paid out by said Trustees in the following order, to-wit: First, for taxes, insurance, repairs and maintenance of said real estate; Second, for the payment of principal and interest upon obligations of the Trustees; and third, for distribution to the Settlors, in equal shares, for their natural lives and/or the duration of this trust. "2. In the event of the death of any of the Settlors *114 prior to the termination of this Trust, his or her proportionate share of the income to be derived from the corpus of this Trust, shall be paid to the heirs of the body of such deceased Settlor, share and share alike, from the date of the death of such Settlor or Settlors until the termination of this Trust. Should any Settlor die prior to the termination of this Trust, leaving no heir of the body surviving, then his or her proportionate share of such income shall be divided equally among the surviving Settlors, or the heirs of the body of any deceased Settlor, per stirpes. "3. Upon the 19th day of August, 1960, this Trust shall terminate and cease, and the corpus thereof then remaining in the hands and names of the Trustees shall be conveyed, transferred and delivered unto the Settlors, in like manner as provided for the distribution of the income thereof in the next preceding item hereof. Should the Trustees find that the corpus of This Trust then remaining in their hands cannot be equally and fairly divided and/or distributed, as hereinabove provided, without manifest injury to such corpus, the Trustees shall proceed to liquidate such real estate and/or personalty before making *115 distribution to the Settlors. "4. The Trustees shall hold and control the corpus of this Trust during the life of this Trust with power to sell, transfer, convey, assign and deliver the same. The said Trustees shall hold, manage and control such property during the life of this trust with power to sell, transfer, assign and deliver the same and with full power to invest and re-invest the principal thereof, with like power over all investments, which investments or re-investments may be made by the said Trustee in their sole discretion without limitation to such investments as may be by law designated as proper investments for Trustees. "5. The said Trustees shall have full power in converting personalty into realty and realty into personalty; to consent to consolidations and reorganizations; and to execute and deliver all powers of attorney, deeds, mortgages and agreements which they may deem necessary and advisable in the administration of this trust. "6. Receipts signed by the said Trustees for any monies or other property delivered to them shall at all times be sufficient to discharge the person or persons delivering same from all further accountability for such property and *116 no person, corporation or transfer agent dealing with said Trustees as to matter purporting to affect the trust estate shall be concerned or required to inquire as to such transactions nor as to the disposition of the proceeds thereof. "7. The Trustees shall not be required to set aside any sinking fund, shall have full power to determine what shall be considered corpus and what income of this trust, and shall not be held accountable for any errors of judgment, but shall be liable only for gross negligence or wilful default in the administration of this trust. "8. Should either of the Trustees, named herein, die prior to the termination of this trust, the surviving Trustee shall serve as sole Trustee for the remainder of the term of this trust. Should both Trustees die prior to the termination of this Trust, Ralph E. Grimme shall serve as Trustee for the remainder of the terms of this Trust. "9. This trust is hereby declared to be irrevocable and the Settlors hereby fully and completely release, convey, transfer and assign the property herein described to the Trustees herein named without any right, power or authority in any way to cancel, revoke or alter the transfer, conveyance *117 or assignment herein referred to, or any of the terms of this trust agreement." Following the execution of the trust conveyance the trustees have leased the real estate and collected the rentals. When a property became vacant they secured another tenant. One piece of property was sold by them and the proceeds used to retire a mortgage on another piece of trust property. Cincinnati Stamping Co., a 1/5 interest in which was conveyed by the trust instrument, is a successful manufacturing business carried on at 28 W. McMicken Avenue, Cincinnati, Ohio. These premises are one of the 6 properties included in the aforementioned trust conveyance. They are under lease by the trustees to Cincinnati Stamping Co. This company was organized under an alleged "Partnership Agreement" under which the petitioner was designated as a "partner" with a 1/5 interest. This "Partnership Agreement" was executed by Albert J. Hoersting and Eleanor F. Sherman as trustees. The greater part of petitioner's reported income in each of the taxable periods here involved consisted of earnings of the so-called "partnership", Cincinnati Stamping Co. Albert J. Hoersting, one of petitioner's trustees, is an officer *118 of The Hoersting & Holtmann Co., of Dayton, Ohio. This company carries on a metal fabricating business somewhat similar to that of Cincinnati Stamping Co., and Hoersting, in connection with his purchases of material for his Dayton business, made purchases of material for Cincinnati Stamping Co., and otherwise assisted in the operation of that business: Upon the organization of petitioner the trustees issued $80,000 in 8 per cent debenture bonds which were distributed to the beneficiaries in proportion to the value of their respective investments. The contributions of the several trustors to petitioner's corpus were not similar in value and the bonds were distributed so as to "equalize" the shares and give to each a distribution from petitioners' income in the form of bond interest plus the equal distribution of net income after payment of bond interest, effecting a total distribution in ratable proportion to the value of the contribution of each. In making its returns for each of the periods here involved, petitioner deducted as interest paid the amount it paid in such period as interest on its debenture bonds. Opinion Petitioner contends that it is a "pure trust" organized *119 and operated to hold and conserve property and receive and distribute the income derived therefrom. It is urged that the trustees are not carrying on business and the income received is not due to any activity on their part and consequently it can not be classed as an association taxable as a corporation. We do not agree. It is well settled that the powers granted by the trust instrument to the trustees, and not the extent to which these are used, determine whether it constitutes an association taxable as a corporation. Morrissey v. Commissioner, 296 U.S. 344; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369; Fletcher et al. v. Clark, 150 Fed. (2d) 239, (C.C.A., 10th Cir., July 5, 1945); St. Louis Oil Royalty Trust, 5 T.C. 179, (promulgated June 5, 1945). Here we think the powers thus granted are amply sufficient to so classify the petitioner. The individual owners of the several properties have conveyed them to the trustees with power on the part of the latter in their discretion to sell and reinvest; to change personalty into realty or realty into personalty. Their use and employment of the corpus for the purpose of deriving *120 gain is limited only by the provision that they shall be liable only for "gross negligence or wilful default". They are exempted from the statutory restriction upon the character of investments permitted to a trustee. Not only are the powers broad enough but they have been exercised. The trustees have rented and re-rented properties. They have sold one other property. On behalf of petitioner they have entered into an agreement with certain other trusts and an individual for the organization and operation of a manufacturing business, and have participated in the carrying on of that business and derived substantial profits therefrom. See Fletcher et al. v. Clark, supra.That organization we have held to constitute an association actively doing business. (See Cincinnati Stamping Company, Docket No. 4620, entered July 25, 1945, [4 TCM 806]). Also we think in its organization there is corporate resemblance sufficient to support respondent's determination. See Fletcher et al. v. Clark, supra. The several beneficiaries have conveyed their properties for the production of income therefrom. Centralized management has been secured through the trustees, *121 together with exemption from personal liability upon transactions effected by the trustees. They have not specifically provided for the issuance of transferable shares of interest but we find nothing in the trust instrument that would preclude the assignment and transfer by each of his rights thereunder. Moreover, they have, it appears, arranged what is substantially equivalent to an issue of preferred stock or a transferable evidence of interest through an issue of debenture bonds in a total of $80,000, distributed to the beneficiaries in proportion to the value of their several contributions to the trust corpus. We do not know the form in which these bonds were issued. They were not put in evidence. There is, however, nothing to indicate that they were not legally transferable. We are not informed as to the value of the trust corpus. For all we are advised, the obligation of the bonds may exceed the value of the corpus and the bondholders as such thus may be, for practical purposes, the owners of the total equity in the corpus. We sustain respondent in his classification of petitioner as an association within section 3797 (a) (3), Internal Revenue Code, *122 and consequently taxable as a corporation. The parties are in agreement that if it be held in the case of Cincinnati Stamping Company, Docket No. 4620, [4 TCM 806], that the petitioner therein is an association, it will require that respondent's computation of petitioner's income for the taxable periods here involved be adjusted to include income only the actual amounts distributed to it by Cincinnati Stamping Company, instead of its proportion of the distributable income of that business. Our decision in that case was that Cincinnati Stamping Company, during the taxable years, was an association within section 3797 (a) (3), I.R.C. Consequently, Decision will be entered under Rule 50.